

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-1994

# Piecknick v. Comwlth. of PA, et al.

Precedential or Non-Precedential:

Docket 93-3002

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Piecknick v. Comwlth. of PA, et al." (1994). *1994 Decisions.* Paper 149.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/149

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-3002

_____


FRED PIECKNICK; DOROTHY PIECKNICK and
DAN PIECKNICK, trading and doing
business as Piecknick Towing

v.

COMMONWEALTH OF PENNSYLVANIA; PENNSYLVANIA STATE
POLICE; COLONEL GLENN WALP, individually and in his
capacity as Commander of Pennsylvania State Police;
CAPTAIN THOMAS BERRYHILL, individually and in his
capacity as Commander of Troop S; SERGEANT DUANE
DURHAM, individually and in his capacity
as an officer of Troop S


FERDINAND W. AND DOROTHY PIECKNICK
AND DAN PIECKNICK TRADING AND DOING
BUSINESS AS PIECKNICK TOWING,
                                Appellants

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 93-cv-00393)

_____

Argued:  June 23, 1994


PRESENT:  BECKER and HUTCHINSON, <u>Circuit Judges</u>,
          and PADOVA, <u>District Judge</u>*


(Filed:  September 30, 1994)

_____

_____

\*   Hon. John R. Padova, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Peter M. Suwak, Esquire                    (Argued)
Pete's Surplus Building
P.O. Box #1
Washington, PA      15301
                Attorney for Appellants

Ernest D. Preate, Jr., Esquire
  Attorney General
Calvin R. Koons, Esquire
  Senior Deputy Attorney General
John G. Knorr, III, Esquire
  Chief Deputy Attorney General
Gloria A. Tischuk, Esquire                 (Argued)
  Deputy Attorney General
Office of Attorney General of Pennsylvania
Fourth Floor
Manor Complex
564 Forbes Avenue
Pittsburgh, PA      15219
                Attorneys for Appellees

_____

OPINION OF THE COURT
_____


HUTCHINSON, <u>Circuit Judge</u>.


        Appellants, Fred, Dorothy and Dan Piecknick, operators of Piecknick Towing (collectively "Piecknick"), appeal an order of the United States District Court for the Western District of Pennsylvania dismissing their complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  In their complaint, Piecknick alleged that appellees, the Commonwealth of Pennsylvania, the Pennsylvania State Police, and several officials of the State Police[1] (collectively the "State Police"), deprived them of due

_____

[1].  The officers sued in their official and individual capacities were: Glen Walp, Commissioner of the Pennsylvania State Police;

process of law in violation of the Fourteenth Amendment when the State Police awarded towing jobs on state highways to a towing service which Piecknick alleges was not authorized to receive those jobs under a State Police assigned zone towing policy.[2] Piecknick's complaint sought damages pursuant to 42 U.S.C.A. § 1983 (West 1981).

We hold that the facts alleged in Piecknick's complaint fail to set out a deprivation of a property or liberty interest under the Fourteenth Amendment. Therefore, we will affirm the order of the district court, but on different reasoning.

## I.  Factual & Procedural History

Count I of Piecknick's complaint asserted a civil rights claim under section 1983 based upon a deprivation of due process as guaranteed by the Fourteenth Amendment.[3] It alleged

(..continued)
Captain Thomas Berryhill, of Troop S in Washington County where Piecknick is located; and Sergeant Duane Durham, also with Troop S.

[2]. Piecknick also alleged a due process violation under the Fifth Amendment. The district court dismissed that claim because there was no federal government action. Piecknick does not appeal the dismissal of this claim.

[3]. Count II alleged a pendent state law claim for harassment and intentional interference with business opportunity. Specifically, it alleged that the State Police intentionally called another towing company to service disabled vehicles knowing Piecknick was entitled to such business under its policy and practice, falsely asserted towing jobs had requirements Piecknick did not meet in order to disqualify it, failed to cooperate with Piecknick concerning traffic control at the scene, and threatened to arrest Piecknick at the scene without justification. We need only address Count I's section 1983 claim, as it provides the only possible basis for federal jurisdiction.

that the State Police established a rotational policy and heavy duty service list with specific zones (Zones 1-3) specifying which towing company would be contacted to remove vehicles from accident scenes on interstate highways in Washington County, Pennsylvania. It also alleged that the State Police had established a policy and practice of limiting the assignment of towing services to a designated operator to only one zone. Piecknick is located in Washington County and was assigned to Zone 1. A map outlining the zones as they existed for the past four years and designating the operators in each zone was attached to the complaint.

The complaint alleged Insana Towing ("Insana"), a competitor, was assigned to Zone 2 but has been receiving assignments in Zone 1, the zone in which Piecknick claims it has acquired property or liberty interests from the actions of the State Police. According to the complaint, the State Police began referring towing in Zone 1 to Insana after operating for several years under a policy whereby Piecknick received all towing business in Zone 1.[4] Piecknick alleged that it was contrary to past policy and regulations for the State Police to refuse to refer all towing services in Zone 1 to Piecknick and instead to refer towing services to another towing company located in and

---

[4]. The facts show that another towing company, Burns, had previously been assigned to Zone 1 along with Piecknick. Burns was removed from the list when it went out of business and Piecknick thereafter received all Zone 1 towing business for several years. After this action was filed, Kolor Works Tow was assigned to Zone 1 along with Piecknick. See Reply Brief of Appellants at 5.

assigned to a different zone.  Piecknick argues that the State Police may not use Insana in Zone 1 because Insana was assigned on the map exclusively to Zone 2.  According to Piecknick, this action unreasonably interfered with its right to carry on its business and resulted in a 50%, or $40,000 per year, reduction in its receipts.

The "regulation" that Piecknick relies upon is actually a guideline setting forth procedures for state troopers to follow in placing towing and wrecker calls for abandoned or disabled cars on state highways.  The guideline was distributed to local towing services by State Police "[t]o advise service garages of Pennsylvania State Police Policy in regard to wrecker calls in accident cases and laws pertaining to same."  Appendix ("App.") at 15a.  The guideline also states that "[t]he Trooper shall contact the nearest available agency offering the required service."  Id.[5]  The guideline further states that the troop policy is to "[c]all the nearest available [towing company] for required towing service on a rotational basis."  App. at 15a.  It states that troop personnel will not recommend a wrecker service and will first ask if a particular wrecker is desired.  Id.  The communications room supervisor, not the trooper on the road, makes the decision on the nearest available towing service.  Id.

---

[5].  The phrase "nearest available" is taken from the Pennsylvania State Police Field Regulations Manual.  See Bolus v. Walp, No. 91-0678, slip op. at 2 (M.D. Pa. April 16, 1992), aff'd, 986 F.2d 1408 (3d Cir. 1993) (table).  The State Police attached a copy of the field regulation as Exhibit B to its brief in support of its motion to dismiss.  See Supplemental Brief of Appellees at 7 n.3.

at 16a.  If the nearest available service is unable to immediately respond or does not have the proper equipment to do the job, the next nearest available service will be contacted. Id.  This part of the guideline reiterates that "[o]ur policy is the nearest available to the scene on a rotational basis," id. at 17a (emphasis added and in original), and also states that if a trooper at the scene makes an informed observation that a particular on-scene wrecking service is unable to safely and expediently see to the removal of a vehicle, he may request the services of the next nearest available service capable of handling the job.  Id.

Piecknick claims that it is entitled to receive all towing calls in Zone 1 because it is located closest to the state highway.[6]  According to the State Police, its towing policy, as expressed in the guideline, does not require exclusive use of only one towing service in each zone.  It reasons that this appears from the fact that more than one towing service was

_____

[6].  At oral argument, Piecknick stated that it did not assert a right to a monopoly in Zone 1; rather, it argued that its constitutional claim arose from the mere use of a designated Zone 2 towing service as one of the towing services in Zone 1. However, an exhibit attached to its complaint states otherwise. In a letter dated October 20, 1992 from Piecknick's counsel to the State Police, attached as Exhibit C to the complaint, Piecknick claimed a legal right "to receive all towing calls in Towing Zone #1.  The only exception would be if the firm was unavailable or did not have the requisite equipment for the job." App. at 20a (emphasis added).  This exhibit claims a monopoly in Zone 1.  We look solely at the allegations in the complaint when reviewing an order dismissing a complaint pursuant to Rule 12(b)(6), and Exhibit C is a part of the complaint. Therefore, we will consider both arguments.

assigned to each zone as well as from use of the phrase "rotational basis" and the other provisions in the policy giving a trooper discretion to call another towing service if he or she believes one service may not be able to handle the job.

Piecknick's complaint alleged it complained in writing to the State Police and was later informed that an investigation had been undertaken "under the auspices of [one of the State Police defendant appellees,] Captain Berryhill." Complaint at ¶ 14, App. at 11a. It never received any report of the investigation's findings or response to its attorney's inquiry. The complaint failed to allege that any individual State Police defendants were involved in the decision to use Insana in Zone 1, beyond a general allegation that using Insana on a rotational basis was "ratified and approved by the named officers in a chain of command." Complaint at ¶ 15, App. at 12a.

The State Police moved to dismiss the complaint on several grounds, including lack of subject matter and personal jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and (2) and failure to state a claim under Rule 12(b)(6). Piecknick stipulated to the dismissal of the Pennsylvania State Police in its corporate capacity as a state agency and clarified its intention to limit its claims to those against individual defendants.

In an order dated November 29, 1993, the district court granted the State Police's motion and dismissed the complaint. In an accompanying opinion, the court held that Piecknick had failed to state a claim upon which relief could be granted

against any of the defendants.  Opinion dated November 29, 1993 at 3.  The court first concluded that the section 1983 claims against the individual defendants in their official capacities were barred by the Eleventh Amendment.  Id. (citing Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989) ("neither a State nor its officials acting in their official capacities are persons under § 1983")).  With respect to the individual defendants' personal liability, the court recognized that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 4 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The court held that Piecknick's allegations as to the personal liability of the individual defendants "fail to sufficiently allege a violation of clearly established statutory or constitutional rights of which a reasonable person would have known."  Id.  Thus, it granted the State Police's motion to dismiss the section 1983 claim under Rule 12(b)(6) as to the individual defendants' personal liability.  It also dismissed the state law claims without prejudice for lack of subject matter jurisdiction or, perhaps more properly, pendent or supplemental jurisdiction.  Piecknick filed a timely notice of appeal.

## II.  Jurisdiction & Standard of Review

The district court had subject matter jurisdiction under 28 U.S.C.A. §§ 1331 and 1343 (West 1993).  We have

jurisdiction over the appeal from the district court's final order under 28 U.S.C.A. § 1291 (West 1993).[7]

We exercise plenary review over the district court's dismissal of a complaint for failure to state a claim. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). We must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, and dismissal is appropriate only if "no relief could be granted under any set of facts which could be proved." Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988); Jordan, 20 F.3d at 1261.

---

[7]. Contrary to the State Police's assertion in its Supplemental Brief, Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984) ("Pennhurst II") does not bar this action. Pennhurst II held that a "federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought . . . has an impact directly on the State itself." Id. at 117; see Allegheny County Sanitary Auth. v. EPA, 732 F.2d 1167, 1173-74 (3d Cir. 1984). Pennhurst II did not address the Eleventh Amendment's bar of suits against state officials in federal court when the claims are based on deprivation of federal constitutional or statutory rights. Allegheny County, 732 F.2d at 1174 (citing Pennhurst II, 465 U.S. at 104 n.13). The fact that the federal due process right hinges upon a property or liberty interest created in part by a state regulation or policy statement does not make the cause of action any less federal in nature. See Hafer v. Melo, 112 S. Ct. 358, 365 (1991) (Eleventh Amendment does not bar federal section 1983 action against state officials in their individual capacity for conduct undertaken as part of their state jobs and duties); see also Scheuer v. Rhodes, 416 U.S. 232, 237 (1974) ("[S]ince Ex parte Young, 209 U.S. 123 (1908), it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law."); Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (property interests are created and defined not by United States Constitution but by independent source, such as state law).

III.  Property or Liberty Interest Under the Fourteenth Amendment

A.  Property Interest

To establish a section 1983 civil rights claim, a plaintiff "must demonstrate that the conduct complained of was committed by a person acting under state law and "'that the conduct deprived him of rights, privileges or immunities secured by the Constitution.'"  Carter v. City of Philadelphia, 989 F.2d 117, 119 (3d Cir. 1993) (quotation omitted).  Where a section 1983 plaintiff claims a procedural due process violation, his claim is dependent upon the denial of a constitutionally protected property or liberty interest.  See U.S. Const. amend. XIV, § 1; Mathews v. Eldridge, 424 U.S. 319, 332 (1976); Carter, 989 F.2d at 119-20.

"One alleging a property interest in a benefit protected by due process must go beyond showing an unsubstantiated expectation of the benefit."  Carter, 989 F.2d at 120.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  Such property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Id.

"A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or

mutually explicit understandings that support his claim of entitlement to the benefit[.]" Perry v. Sindermann, 408 U.S. 593, 601 (1972). "The plaintiff must demonstrate entitlement to a property interest created expressly by state statute or regulation or arising from government policy or a mutually explicit understanding between a government employer and an employee." Carter, 989 F.2d at 120. In this case, the existence of a property right is an issue of state law. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990) (tow service owner's claim of property interest created by Oklahoma's wrecker statute was issue of state law). Thus, we must examine the State Police towing policy and any applicable statutes or regulations to determine if a property right exists. Id.

The guideline that Piecknick calls a regulation is not a regulation with any force of law. It was never promulgated in accordance with the notice and hearing procedures required for regulations. See Commonwealth Documents Law, 45 Pa. Cons. Stat. Ann. §§ 501-907 (1991); Pa. Stat. Ann. tit. 45, §§ 1201-08 (1991); see also infra typescript at 25-26. It is no more than a policy statement setting forth procedures that state troopers should follow when handling towing calls for disabled or abandoned vehicles on state highways. The guideline itself states its purpose is merely "to advise service garages of Pennsylvania State Police Policy in regard to wrecker calls in accident cases and laws pertaining to same." App. at 15a. The guideline uses the express term "policy" in stating "our policy is the nearest available to the scene on a rotational basis."

<u>Id.</u> at 17.  The guideline makes no commitments to any particular service or zone; rather, it states only that the trooper will call the nearest available service on a rotational basis.

We do not believe that this guideline creates an enforceable contract between the towing services on the list and the State Police or otherwise gives any particular towing service a right to receive all the towing business along the highways adjacent to or in any particular zone.  It is too vague and indefinite for that purpose and to enforce it as Piecknick asks would be likely to interfere with traffic safety and mobility on our state and interstate systems as disputes arose about a particular towing company's proximity, availability and capability to handle and respond to all the calls for towing within a particular zone.  We will, nevertheless, consider whether the guideline was created to satisfy any other governing state statute or regulation that could create a property interest, or whether the guideline itself or the parties' mutually explicit understanding based upon the State Police's past practices have given Piecknick a property interest in the towing business on highways near his place of business within Zone 1.  <u>See</u> <u>Carter</u>, 989 F.2d at 120.[8]

In <u>Pritchett v. Alford</u>, 973 F.2d 307, 317-18 (4th Cir. 1992), the court of appeals held that a wrecking service had a

---

[8].  This is an issue of first impression for us.  We declined to address the issue in <u>Bolus v. Walp</u>, Civ. A. No. 91-0678 (M.D. Pa. April 16, 1992) (mem. op.), <u>aff'd without opinion</u>, 986 F.2d 1408 (3d Cir. 1993).

constitutionally protected property right that prevented its removal from the South Carolina State Highway Department's wrecking service rotation list without prior notice or an opportunity to be heard. In that case, however, state regulations required maintenance of the list:

> [T]he regulations required every highway patrol district to establish wrecker zones and "wrecker-rotation" lists for the zones, S.C. Code Regs. § 63-600(A)(8), and directed that the lists should be administered fairly and in a manner designed to ensure that all wrecker services on the list have an equal opportunity to the towing business arising from the rotation list. § 63-600(A)(10).

Id. at 317; see also Abercrombie, 896 F.2d at 1232 (operator of wrecker service had property interest under Oklahoma law in equal number of referrals by city where state statute provided that list of wreckers must be maintained and that agency should use nearest available wrecker on list on alternating basis); Gregg v. Lawson, 732 F. Supp. 849, 853-54 (E.D. Tenn. 1989) (wrecker service taken off state rotational wrecker list pursuant to order prohibiting owners with felony record from being on list had constitutionally protected property interest in remaining on list because relevant agency regulations were more than mere internal matter and set forth formal procedures for removal or suspension from list to compel compliance with regulations). These cases are distinguishable. In all of them, a state statute or regulation gave a towing operator a property interest. Here,

there is no Pennsylvania statute or regulation governing towing or wrecker services.[9]

Piecknick's reliance on Pataula Electric Membership Corp. v. Whitworth, 951 F.2d 1238, 1242-43 (11th Cir.), cert. denied, 113 S. Ct. 302 (1992), is similarly misplaced. There, the court of appeals held that the lowest bidder may have a property interest in an award of a contract if a state statute and regulation requiring competitive bidding and awards were to be made to the lowest bidder on contracts for state services. The property interest arose from the state statute requiring competitive bidding and a rule requiring that contracts be awarded to the lowest bidder. Id. Here there is no such statute or rule.

This case is also distinguishable from Stana v. School District of City of Pittsburgh, 775 F.2d 122 (3d Cir. 1985). There, a school district, pursuant to a state statute providing that all teaching positions in the school district must be filled from the three highest ranking people, had an established policy concerning placement and ranking on a state-required eligibility list. Id. at 124. Local school district policy provided that names on the list would be returned for four years. This Court

_____

[9]. In addition, these cases from other jurisdictions all involved the removal of wrecker services from a call list. The towers removed from the list were effectively barred from providing services in all towing situations where the police had authority to direct removal of disabled vehicles. Piecknick has not been removed from the towing list and is still one of two towing services assigned to Zone 1. This distinction becomes relevant to Piecknick's claim of a liberty interest, a subject we discuss infra.

concluded that because remaining on the eligibility list was a prerequisite to a teaching position, the school district had created a constitutional property interest and a legitimate claim of entitlement to remaining on the eligibility list. Id. at 125, 126-27; cf. Newark Branch, NAACP v. Town of Harrison, New Jersey, 940 F.2d 792, 810-12 (3d Cir. 1991) (fire fighter applicants who were tested and added to hiring eligibility list for municipal fire fighter position did not have protected property interest in their ranking on list).

Because there is no governing state statute or regulation in the case now before us, we next consider whether the guideline itself, or the parties' mutual understanding, is definite enough to create a property interest entitled to the constitutional protection of due process. In O'Hare Truck Service, Inc. v. City of Northlake, 843 F. Supp. 1231, 1233 (N.D. Ill. 1994), the district court held that a towing service did not have a property right in maintaining its name on an informal rotation list because "the 'mutually explicit understandings' that constitute property interests under the holding of Perry cannot be based on the representations of government officials who are not authorized to make such representations." Id. at 1233 (quotation and citation omitted); see also Durham v. Jones, 698 F.2d 1179, 1181 (11th Cir. 1983) (per curiam) (maintaining name on sheriff's informal rotating list of wrecker services did not amount to property interest because it was mere unilateral expectation on wrecker owner's part). In O'Hare, the city's governing body was the only agency authorized to make such

commitments and create such entitlement; hence, there could be no property right unless it had reviewed and expressed its approval of the practice of using the rotation list after observing the applicable law. O'Hare, 843 F. Supp. at 1233, 1235. Here, as in O'Hare, no state agency with statutory authority to do so has approved or authorized the State Police's towing policy in this case in the manner state law requires for the promulgation of a binding regulation.

We believe White Plains Towing Corp. v. Patterson, 991 F.2d 1049 (2d Cir.), cert. denied, 114 S. Ct. 185 (1993), is particularly instructive here. There the State Police divided an eleven mile stretch of state highway into three zones and assigned each zone to one towing company that would, when summoned, provide service. Id. at 1053. These assignments gave a single towing company an exclusive right to towing referrals in its own zone.[10] Id. Under that system, the State Police always dispatched the towing company assigned to the zone unless a disabled motorist requested another. The State Police assigned a towing company to a zone for anywhere from two days to a year. The parties stipulated that the towing dispatch system was not specifically authorized by, or codified in, any state statute or regulation and that participation in the program was not contractual. Id.

---

[10]. Here, more than one towing service is assigned to each zone. Contrary to Piecknick's assertion, Piecknick never had an exclusive right to all towing in Zone 1. See supra note 4.

The court of appeals held that the unilateral expectations of the towing service were insufficient to create a property interest.  Id. at 1062.  It did so based on a conclusion that New York law presumes a contract for services which makes no specific provision for duration is terminable at will.  Thus, it held that a state police assignment of a particular area of highway to a towing company was not a property right because the assignment system was not specifically authorized by any statute or regulation but was merely an informal system that did not even specify the duration of the assignment.  Id.

In Lipinski v. Dietrich, 578 F. Supp. 235, 238 (N.D. Ind. 1984), the court decided that even if a contract could be implied between a towing service and a municipality to retain the service's name on a list of towing services that police would call on a rotating basis, the implied contract was unenforceable under state law because it was impossible to ascertain the contract's terms.  In addition, the court concluded there was no mutually explicit understanding between the parties because neither the police nor the towing service had made any explicit representations about the term of the list's continued existence or the towing service's continuing availability, as required by Roth and Perry.  Id.

We believe the reasoning of White Plains Towing and Lipinski is persuasive.  Applying that reasoning to the facts, we note that here Piecknick does not have an exclusive right to provide towing in Zone 1 because other towing services may be called if Piecknick is not available.  Furthermore, the right to

tow in the zone is dependent on availability, and the towing guideline itself does not set aside an exclusive territory for any towing service. These facts weaken Piecknick's case because they belie Piecknick's contention that a map setting forth zones in which certain nearby operators are to be called on the basis of availability permits an inference that a towing service listed in one zone cannot operate in another.

We further note that the guideline's policy specifically contemplates the use of other services on a "rotational basis." See App. at 17a ("Our policy is the nearest available on a rotational basis."). Whatever this ambiguous phrase may mean, plainly it does not mean that Piecknick or anyone else has an exclusive right to all the towing services the State Police need to call on in Zone 1 or anywhere else. State Police officers at the scene are permitted, in their discretion, to decide whether any particular wrecking service they have called is unable to safely and expeditiously remove the disabled vehicle after the wrecker arrives on the scene and, in that case, they may call the next nearest available towing service.

Not only does the guideline lack a prohibition against using a towing service assigned to a zone other than the one assigned to it on the map, but it fails to set any particular term during which a towing service will continue to get assignments within its primary zone. Pennsylvania law, like that of New York, presumes that a contract for services having no specific term is terminable at will. See, e.g., Booth v. McDonnell Douglas Truck Servs., Inc., 585 A.2d 24, 27 (Pa.

Super.), alloc. denied, 597 A.2d 1150 (Pa. 1991); Darlington v. General Elec., 504 A.2d 306, 309 (Pa. Super. 1986). Thus, as in White Plains Towing, whatever rights Piecknick may have had are terminable at will. See White Plains Towing, 991 F.2d at 1062; Lipinski, 578 F. Supp. at 238. We recognize that Pennsylvania's strong presumption in favor of employment at will has been weakened in some cases involving the rights of public employees, see 43 Pa. Stat. Ann. §§ 1422, 1423 (West 1991); see also Kraoja v. Keypunch, Inc., 622 A.2d 355, 359-60 (Pa. Super. 1993), but we do not believe those cases apply to situations such as this where the state directs third parties facing an emergency need for a service to an independent contractor. Piecknick has no rights as an employee of the state because he is a mere supplier of services. See San Bernardino Physicians' Servs. Medical Group v. County of San Bernardino, 825 F.2d 1404, 1409-10 (9th Cir. 1987) (professional corporation of physicians' four-year contracts, containing automatic one year extension, with county-operated medical center to provide emergency services which could be terminated only "for cause," did not create property interest and analogy to employment contracts failed because corporation was not employee of state, but rather was mere supplier of services).

The guideline at issue here is not a regulation having the force of law. The towing policy does not prohibit the State Police from using Insana as a towing service in Zone 1 simply because Insana may also service Zone 2. The State Police are not required to continue towing assignments to an area designated in the zone map for any particular period of time, and there was no

mutual understanding that Piecknick, as a Zone 1 operator, was exclusively entitled to the Zone 1 towing. Piecknick cannot point to any other governing state law or regulation that creates a federally protected property interest guaranteeing it the right to provide towing services in Zone 1, to the exclusion of other towing services which may also be represented in other zones. Accordingly, Piecknick has not alleged any property interest entitled to protection under the Due Process Clause of the Fourteenth Amendment.

### B.  Liberty Interest

The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments. Greene v. McElroy, 360 U.S. 474, 492 (1959); see also Truax v. Raich, 239 U.S. 33, 41 (1915) ("the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure"); Cowan v. Corley, 814 F.2d 223, 227 (5th Cir. 1987).

"[T]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits . . . brought directly under the due process clause." Bernard v. United Township High Sch. Dist. No. 30, 5 F.3d 1090, 1092 (7th

Cir. 1993). "'It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment.'" Id. (quoting Wroblewski v. City of Washburn, 965 F.2d 452, 455 (7th Cir. 1992)).

In Cowan, the United States Court of Appeals for the Fifth Circuit considered a case in which a wrecking company had alleged a property or liberty interest because the local sheriff, in disregard of a service call list, gave certain wrecker companies preferential treatment in the assignment of calls. After complaining to the sheriff, the plaintiff was expelled from the wrecker association and was therefore barred from receiving further county business. Although it concluded there was probably no property interest, the court of appeals held that the district court should have considered whether a liberty interest existed. Cowan, 814 F.2d at 228. The court of appeals expressed no opinion on the existence of any liberty interest but simply reversed the district court's order granting dismissal of the section 1983 complaint for failure to state a claim and remanded it to consider, in the first instance, whether the complaint alleged a protected liberty interest. Id. at 227-28.

There are at least two other district court cases on point. In Nall v. Pitre, No. 88-965 (M.D. La. June 9, 1989), a towing service filed a section 1983 claim against a sheriff after he removed the tower's wrecking service from the rotating call list without allowing the towing service an opportunity to be heard. The Sheriff moved for summary judgment, arguing that the towing service had not established a constitutionally protected

liberty or property interest. After considering evidence that the towing company had been on the list for nine years, evidencing an understanding sufficient to create a property interest, the district court held there were questions of fact about the intentions of the parties that precluded summary judgment. The court recognized that no contract nor binding rule or regulation accompanied the list, which was developed and used without public notice, but it nevertheless determined there was a genuine dispute of material fact from which an agreement could be inferred. Id., slip op. at 2-3. Specifically, the court denied the motion for summary judgment in order to give the plaintiff a chance to prove the existence of a custom or practice from which a mutual understanding sufficiently definite enough to create a property interest could be inferred in the absence of official rules or regulations governing towing. Applying Cowan, the court also reasoned, in the absence of any property interest, the owner of a towing service might have a liberty interest that would make his complete removal from the rotation list an unreasonable governmental interference with his right to pursue a livelihood. Id. at 3. But see Stana, 775 F.2d at 125 n.1 (removal from teacher eligibility list could implicate liberty interest in following chosen profession but where plaintiff has not alleged publication of the list, she cannot claim deprivation of liberty interest).

Nall is distinguishable. Piecknick was not threatened with a loss of its right to engage in the towing business. It was not completely removed from the towing rotation call list,

and it remained in the Zone 1 rotation.  The police merely substituted Insana for a company with which Piecknick had formerly shared Zone 1 rotation.

Cowan is also distinguishable.  There, the towing company became unable to compete for its fair share of the local towing business because the sheriff gave preferential treatment to plaintiff's competitors, and the towing business ultimately lost all ability to compete by virtue of being summarily expelled from the towing association that receives all county business. See Cowan, 814 F.2d at 225.

In Bolus v. Walp, the second district court case, the United States District Court for the Middle District of Pennsylvania granted summary judgment to Pennsylvania State Police officials in an action challenging a State Police towing policy in Lackawanna County, Pennsylvania.  There, the plaintiff, Bolus Towing, alleged that the State Police failed to comply with the provisions of the Pennsylvania State Police Field Regulations Manual.  The section Bolus Towing relied on provided that the police should contact the nearest available towing service when towing service is needed.  After an accident on Interstate 81, the driver of the disabled vehicle asked the state police to contact the truck owner to authorize a towing service to tow the vehicle.  There was evidence that the owner of the disabled vehicle requested a particular towing service to do the towing, but the identity of the service the owner requested was not clear and the vehicle's owner changed his mind in favor of Bolus Towing after Bolus arrived on the scene and asked for the job.  One of

the police officers on the scene refused to allow Bolus Towing to carry out the job unless it compensated the other towing company previously called.  The court observed that the Pennsylvania State Police Field Regulations were not promulgated in compliance with the Commonwealth Documents Law, 45 Pa. Cons. Stat. Ann. §§ 501, 1201-08 (1991), and thus the public was not invited to hearings or to comment upon them.  Relying on Chrysler Corp. v. Brown, 441 U.S. 281, 301 (1979), the district court held that the Field Regulations provided no substantive rights[11] because they were not promulgated pursuant to any mandate or delegation of legislative authority.  Bolus, slip op. at 6 (citing Chrysler Corp., 441 U.S. at 301).  The Field Regulations were merely internal departmental regulations, or interpretive rules, governing the police themselves.  Id.

Here, as in Bolus, the towing policy in Washington County was not promulgated in compliance with the Commonwealth Documents Law.  Thus, the State Police again argue that it does not have the force of law needed to create a property or liberty interest.  Piecknick responds that compliance with the Documents Law is not controlling in regard to Piecknick's liberty interest claim because Piecknick's claim relies on an established custom

---

[11].  The district court alternatively held that the State Police policy was followed because it provided that where two towing services are located within a reasonable distance of each other, they may both be considered nearest, and which to call was a matter of indifference so long as there was no evidence of improper partiality.  The incident which precipitated the complaint involved in Bolus did not involve the regulations Piecknick challenges because there the officer acted upon the driver's request as to towing service.  Id. at 7.

and practice concerning the division of tow work in Washington County rather than the written policy itself. It argues the custom is itself sufficient to support a due process claim.

The Commonwealth Documents Law distinguishes between a "regulation" and a "statement of policy." It states that the latter may consist of "[a]ny document, except . . . a regulation, promulgated by an agency which sets forth substantive or procedural personal or property rights, privileges, immunities, duties, liabilities or obligations of the public or any part thereof, and includes, without limiting the generality of the foregoing, any document interpreting or implementing any statute enforced or administered by such agency." 45 Pa. Cons. Stat. Ann. § 501. An agency's policy statement must be promulgated in accordance with the Commonwealth Documents Law if it is to establish a standard of conduct with the force of law. Compare Orbera v. Commonwealth, 497 A.2d 693, 695-96 (Pa. Commw. 1985) with Pennsylvania Human Relations Comm'n v. Norristown Area Sch. Dist., 374 A.2d 671, 679 (Pa. 1977). Because of our conclusion that the Washington County towing guideline does not create any "substantive or procedural personal or property rights," 45 Pa. Cons. Stat. Ann. § 501, the Documents Law is indeed inapplicable. Nevertheless, we agree with Piecknick that failure to follow the Documents Law does not bar consideration of whether the towing guideline or any policy, practice or custom that arose out of it or out of a mutual understanding between the parties created a property or liberty interest.

Ultimately, however, we believe Piecknick's argument fails. Although Piecknick's complaint alleges that it was the custom and practice of the State Police, over the past four years, to use only Zone 1 designated operators to perform towing in Zone 1, there is no allegation that this custom was to continue for any term. Adding Insana, a Zone 2 designated operator, to the operators who the police could call on to perform towing services in Zone 1 is not an unreasonable interference with Piecknick's right to pursue its chosen occupation. This case is distinguishable from those in which a person's license to pursue a chosen occupation is revoked or substantially interfered with, see Herz v. Degnan, 648 F.2d 201 (3d Cir. 1981), or where there is harm to an individual's reputation, see Chilingirian v. Boris, 882 F.2d 200 (6th Cir. 1989). See also Durham, 698 F.2d at 1181 (sheriff did not affect towing company's right to operate towing service or ability to perform towing for other law enforcement agencies where it refused to place towing service on call list). It is the liberty to pursue a particular calling or occupation and not the right to a specific job that is protected by the Fourteenth Amendment. See Bernard, 5 F.3d at 1092.

Accordingly, we hold that no liberty interest has been alleged in this case.[12]

---

[12]. Because we have concluded that no property or liberty interest is implicated, we would not reach the issue of qualified immunity even if the issue of qualified immunity could be determined on a Rule 12(b)(6) motion.

IV.

For the foregoing reasons, we will affirm the district court's order dismissing the complaint under Fed. R. Civ. P. 12(b)(6).[13]

---

[13]. On appeal, Piecknick seeks to amend its complaint to refashion the state law claim of interference with business opportunity as a federal constitutional claim alleging "police harassment". Brief of Appellant at 15 (citing Philadelphia Yearly Meeting of the Religious Soc'y of Friends v. Tate, 519 F.2d 1335 (3d Cir. 1975) (police harassment can sustain cause of action under section 1983) and San Jacinto Sav. and Loan v. Kacal, 928 F.2d 697 (5th Cir. 1991) (per curiam) (same)). This issue is waived. Piecknick never sought leave to amend its complaint in the district court when it had the opportunity to do so. Because Piecknick did not raise this issue in the district court, we will refrain from considering it. See Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932–33 (3d Cir. 1976).