**NICK POURZAL, Plaintiff**
**v.**
**MARRIOTT INTERNATIONAL, INC., Defendant**

Civ. No. 2001-140

District Court for the Virgin Islands

Division of St. Thomas and St. John

February 25, 2004

A. JEFFREY WEISS, ESQ., St. Thomas, U.S.V.I., *for plaintiff*

MARIE A. THOMAS, ESQ., St. Thomas, U.S.V.I., *for defendant*

MOORE, *District Judge*

## MEMORANDUM

Defendant Marriott International, Inc. moves to dismiss plaintiff's claims for tortious interference with prospective advantage, *prima facie* tort, and civil conspiracy under Rule 12(b)(6). After considering the parties' oral arguments and written motions, I will dismiss the claims of *prima facie* tort and civil conspiracy because they fail to state a claim on which relief can be granted. I will dismiss the plaintiff's claims for tortious interference with prospective economic advantage without prejudice and grant him leave to amend his claims for tortious interference.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Pourzal was employed by Prime Hospitality Corporation ["Prime"] as the General Manager and Chief Operating Officer of the Frenchman's Reef Beach Resort [the "Hotel"] in St. Thomas, U.S. Virgin Islands from 1975 to 1999. (First Am. Compl., P 6.) As of January 9, 1985, Pourzal had a twenty-year agreement for continued employment that was binding upon Prime, its successors, and assigns. (*Id.*) From 1992 to 2000, the hotel operated under a franchise owned by Marriott. (*Id.* at P 9.) Pourzal's duties included dealing with Marriott on behalf of the Hotel's management company and owners. (*Id.* at P 10.) Pourzal alleges that his challenges to some of Marriott's decisions as franchisor bred hostility and mistrust. (*Id.*)

In September 1998, Marriott began negotiating with Prime for the purchase of the Hotel. (*Id.* at 11.) At the time, Prime's compensation of

---

[1] Because Marriott has not answered the complaint, they have neither admitted [n]or denied Pourzal's factual allegations which comprise this section.

Pourzal was allegedly far in excess of what Marriott paid to its resort managers. Pourzal leased several properties to the Hotel on a month-to-month basis including: two apartment buildings, the Band House and the Chef House, a warehouse, a drug store, and a property used for parking. (*Id.* at P 9.) Pourzal alleges that Prime had agreed to convert the short-term leases into long term leases and contracts if certain terms were met. (*Id.* at P 12.)

On August 8, 1999, Prime terminated Pourzal's employment contract. On March 15, 2000, Marriott finalized the purchase of the Hotel from Prime. On August 7, 2001, Pourzal filed this suit against Marriott claiming tortious interference, *prima facie* tort, and civil conspiracy. On March 20, 2002, Pourzal amended his complaint to include more claims and factual allegations.[2] Pourzal claims that during the negotiations for the Hotel's sale, Marriott advised Prime that it did not wish to assume Pourzal's long-term employment contract. (*Id.* at P 14.) Before Marriott would purchase the Hotel, it allegedly demanded that Prime terminate Pourzal's employment contract and leases, in order to remove any interest he had in the Hotel's business or operations. (*Id.* at P 15.) Pouirzal also claims that Marriott sought indemnification from Prime for any claims for tortious interference he subsequently made against it. (*Id.*)

Pourzal now seeks recovery from Marriott for: tortious interference with contract in Count I, tortious interference with prospective advantage in Count II, and civil conspiracy in Count III. Pourzal also alleges *prima facie* torts in Counts III and IV. In Count III, Pourzal alleges that Marriott intentionally induced Prime to violate the Virgin Islands Plant Closing Act, 24 V.I. CODE ANN. tit. 24, § 471. In Count IV, Pourzal alleges that Marriott caused Prime to breach its employment contract with him and generally acted in bad faith.

Defendant has not answered the complaint, but instead has filed this motion to dismiss Counts II, III, and IV for failure to state claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[2] Marriott contends that this amendment required the leave of the Court, but I disagree because it was filed before any "responsive pleading" as defined by Rule 15. *See Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907 (5th Cir. 1993) (holding that a motion to dismiss was not a responsive pleading under Rule 15).

## II. DISCUSSION

### A. Rule 12(b)(6) Standard

In determining a Rule 12(b)(6) motion to dismiss, "the material allegations of the complaint are taken as admitted," and the Court must liberally construe the complaint in plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969) (citing FED. R. CIV. P. 8(f) and *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). All reasonable inferences are drawn in favor of plaintiff. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). Further, the Court must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46; *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994).

### B. Count II fails to state a claim

In Count II, Pourzal claims tortious interference with prospective advantage. He alleges that Marriott induced Prime to terminate the employment contract as well as the "month-to-month economic relations" regarding the Band House and Chef's House. (Compl., PP 30-33.) Pourzal further alleges that Marriott interfered with his relations with Prime regarding the use and lease of a warehouse and some other other real property. *Id.* Pourzal also alleges that Marriott induced Prime not to extend the Hotel drug store lease. *Id.*

In the absence of local law to the contrary, the restatements of law apply in the Virgin Islands. 4 V.I.C. § 4. Section 766 of the RESTATEMENT (SECOND) OF TORTS [hereinafter "second restatement"] provides the following regarding the interference with contracts or prospective contracts:

> One who, without a privilege to do so, induces or otherwise purposely causes a third person not to
>
> (a) perform a contract with another, or
>
> (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.

Section 766B defines the tort of intentional interference with prospective contractual relations:

> One who intentionally and improperly interferes with another's prospective contractual relation ... is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

The drafters of the second restatement note that "this Section is concerned only with intentional interference with prospective contractual relations, not yet reduced to contract." RESTATEMENT (SECOND) OF TORTS § 766B cmt. a (1979). Therefore, Marriott is correct that, to the extent Pourzal alleges interference with *existing* contracts, the cause of action for interference with prospective advantage in Count II must fail.

During argument on the motions, the plaintiff requested the opportunity to amend his complaint to address these deficiencies in Count II. I will dismiss count II without prejudice and grant the plaintiff leave to amend the complaint *for the limited purpose* of refining and setting forth all the elements of his cause of action for tortious interference under section 766. The claimed prospective relations must be separated from any claimed existing contracts between Pourzal and Prime.

█ Marriot argues that Count II must be dismissed for failure to allege that its actions in protecting its financial interest in Prime's business were "unlawful." (Def.'s Reply at 3-4.) Section 769 of the RESTATEMENT SECOND OF TORTS, however, allows one to protect his financial interest only to the extent the actor does not use "wrongful" means. To be tortious, the conduct need only be wrongful, and not all wrongful conduct is unlawful. Section 769's comments direct that its text be read in conjunction with sections 766B and 767. *See* RESTATEMENT (SECOND) OF TORTS § 767 cmt. a (1979). Section 767 sets forth the factors for determining whether conduct is improper. Thus, Marriott may be liable for tortious interference with prospective contractual relations in protecting its financial interest if its conduct was improper under section 767, even if that conduct violates no law. *See Skopbank v. Hyatt Corporation*, 955 F. Supp. 441, 452, 35 V.I. 356 (D.V.I. 1997.)

## C. Count III fails to state a claim

■ In Count III, Pourzal seeks to rely on theories of *prima facie* tort under section 870 of the second restatement:

> One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability

The *prima facie* tort alleged is that Marriott intentionally induced Prime to violate the Virgin Islands Plant Closing Act, 24 V.I.C. § 471 ["VIPCA"]. Pourzal also brings a claim against Marriott for civil conspiracy, based on the theory that Marriott conspired with Prime to violate the VIPCA. Marriott argues that these claims should be dismissed because, *inter alia,* Pourzal has not sufficiently alleged that Prime violated the VIPCA. Pourzal alleges that Prime violated 24 V.I.C. § 475, which states: " Employees affected by a plant closing shall have the right of first refusal to purchase an affected facility within 90 days of the employer's notice to close the facility as provided by section 472 of this chapter."

In section 471, "Plant closing" is defined as

> a permanent cessation or reduction of business at a facility which results or will result as determined by the Commissioner in the permanent separation of at least 50 percent of the employees of said facility within a period of six months prior to the date of actual or anticipated termination of business or within such other period as the Commissioner shall prescribe, provided that such period shall fall within the six month period prior to the date of actual or anticipated termination of business.

Pourzal only alleges that Marriott "required that Prime terminate plaintiff's long term employment contract, as well as the employment contracts of all other employees, and the employment of all union employees, so that Marriott could begin operations after closing as a new entity." (Compl. at P 38.) Even assuming all Pourzal's averments to be true, he can prove no set of facts that would entitle him to relief because this transaction was not a "plant closing" under the VIPCA. Marriott's

purchase of the Hotel from Prime cannot be viewed as a *permanent* cessation or reduction of business, but rather only as a transfer of interest in a commercial business. Therefore, I will dismiss Count III's claims that Marriott conspired and intentionally induced a violation of the VIPCA.[3]

### D. Count IV will be dismissed

■ Pourzal alleges in Count IV that Marriot's conduct was "undertaken with the intent to harm plaintiff, and cause Prime to breach its employment contract with him" and that its conduct was "malicious, outrageous, reckless and undertaken in culpable bad faith and callous disregard for plaintiff's rights and the laws of the Virgin Islands." (Compl., ¶¶ 45-46.) As in Count III, Pourzal again seeks to rely on theories of *prima facie* tort. This Court has previously decided that a *prima facie* tort claim must be dismissed under *Rule 12(b)(6)* if it is duplicative of other asserted claims. *See Moore v. A.H. Riise Gift Shops*, 659 F. Supp. 1417, 1426, 23 V.I. 227 (D.V.I. 1987). I agree with Marriott that Pourzal alleges conduct in Count IV that is already asserted in his other claims. Accordingly, I will dismiss Count IV of the First Amended Complaint.

### III. CONCLUSION

For the foregoing reasons, I will grant the defendant's motion to dismiss the claims of *prima facie* tort and civil conspiracy in Counts III and IV. I will also grant the motion to dismiss Count II, with leave to plaintiff to amend his claims for tortious interference under section 766 of the second restatement.

---

[3] Defendant has not moved to dismiss the unrelated claim in Count III that Marriott's sale of property acquired to an investment group was an illegal transaction and should be set aside by this Court.