**NICK POURZAL, Plaintiff**
**v.**
**PRIME HOSPITALITY CORP., Defendant**

Civil No. 1999-139

District Court of the Virgin Islands

Division of St. Thomas and St. John

October 30, 2006

A. JEFFREY WEISS, ESQ., St. Thomas, U.S.V.I., *For the Plaintiff.*

MARIA TANKENSON HODGE, ESQ., St. Thomas, U.S.V.I., *For the Defendant.*

JAMES M. WICKS, ESQ., Uniondale, NY, *For the Defendant.*

GOMEZ, *Chief Judge*

## MEMORANDUM OPINION

(October 30, 2006)

Before the Court is the motion of the defendant Prime Hospitality Corporation ("Prime") to dismiss Count II and Count III of the Second Amended Complaint of the plaintiff Nick Pourzal ("Pourzal") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons set forth below, the Court will grant the motion in part and deny it in part.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Pourzal claims that in 1978, a family by the name of Gilbert agreed to sell him a sixteen acre lot (hereinafter the "Gilbert land"). Instead of purchasing the Gilbert land himself, Pourzal allegedly agreed to allow the defendant, Prime Hospitality Corp. ("Prime"), to purchase the Gilbert land, in exchange for ten percent of the pre-tax earning on any use or sale of the land by Prime (the "Sales Agreement"). Pourzal claims that the Sales Agreement was reduced to writing. Pourzal further claims that from 1979 through 1998 he repeatedly contacted Prime about the Sales Agreement, and that Prime affirmed its contractual obligation to pay him, but no money was ever paid.

During this time, Prime developed the Gilbert land and built a hotel, the Frenchman's Reef Beach Resort, on three of the sixteen acres (hereinafter the "Reef"). Pourzal claims that he was employed as the

General Manager and Chief Operating Officer of the Reef pursuant to an employment contract entered into with Prime on January 9, 1985 (the "Employment Contract"). In 1999, Prime sold the Gilbert land to Marriott International, Inc. ("Marriott"). Pourzal claims that on July 22, 1999, Prime informed him that it would not honor the Sales Agreement with him. On August 9, 1999, Prime terminated Pourzal from his position as the General Manager and Chief Operating Officer of the Reef.

Pourzal filed his complaint in this action against Prime on August 18, 1999 (the "Original Complaint"). The Original Complaint alleged that Prime breached its promise to pay Pourzal ten percent of the pre-tax earnings from the sale of the Gilbert land.

On February 28, 2000, Pourzal filed a demand for arbitration with the American Arbitration Association in connection with alleged breaches of his Employment Contract with Prime. On January 14, 2002, an arbitration award was entered in Pourzal's favor. Plaintiff was awarded $4,178,555.60 in damages (hereinafter the "Arbitration Award"). In addition, the arbitrator also ordered Prime to "forthwith restore to [Pourzal] the stock option stripped from [Pourzal] as a result of its improper termination" (hereinafter the "Options").

On March 15, 2002, Prime paid Pourzal the Arbitration Award, together with accrued interest, through an uncertified check from Mellon Bank in Pittsburgh, Pennsylvania. The check cleared on March 25, 2002. In early April, 2002, Prime reinstated Pourzal's stock options.

The Court granted Pourzal leave to file a second amended complaint in this case (the "Complaint") on December 6, 2005. The Complaint now contains three claims for relief: Count I alleges breach of contract; Count II alleges conspiracy and prima facie tort; and, Count III seeks confirmation of the Arbitration Award as well as damages for Prime's alleged failure to comply with the Arbitration Award. Prime subsequently filed this motion to dismiss Counts II and III of the Complaint pursuant to Rule 12(b)(6).

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs motions to dismiss for failure to state a claim upon which relief may be granted. "In considering a Rule 12(b)(6) motion, the Court may dismiss a complaint if it appears certain the plaintiff cannot prove any set of facts

in support of its claims which would entitle it to relief." *Bostic v. AT&T*, 166 F. Supp. 2d 350, 354 (D.V.I. 2001) (quoting *Mruz v. Caring, Inc.*, 39 F. Supp. 2d 495, 500 (D.N.J. 1999)). "While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, the Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief." *Id.* (citations omitted).

## III. ANALYSIS

### A. The Conspiracy and Prima Facie Tort Claims

#### 1. The General Rule of Collateral Estoppel

Prime contends that it is entitled to partial summary judgment under the doctrine of collateral estoppel because the claims in Count II of Pourzal's Complaint have been previously determined by this Court. In Count II, Pourzal alleges that Prime conspired with Marriott to violate the Virgin Islands Plant Closing Act, 24 V.I.C. § 471 *et seq.* ("VIPCA"). In 2001, Pourzal brought a separate action against Marriott alleging, among other things, that Marriott conspired with Prime to violate the VIPCA. On February 24, 2004, this Court dismissed Pourzal's claims for civil conspiracy and prima facie tort for failure to state a claim upon which relief could be granted. *See Pourzal v. Marriott Int'l, Inc.*, 305 F. Supp. 2d 544, 45 V.I. 488 (D.V.I. 2004) (hereinafter the "*Marriott* case" or "*Marriott*").

■■ The United States Supreme Court has described the doctrine of collateral estoppel as follows:

> Once an issue is necessarily determined by a Court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action that involves a party to the prior litigation.

*Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). The general rule is that the party seeking preclusion of an issue under the doctrine of collateral estoppel must establish the following four standard requirements:

1. the identical issue was previously adjudicated;
2. the issue was actually litigated;

557

3. the previous determination was necessary to the decision; and

4. the party being precluded from re-litigating the issue was fully represented in the prior action.

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (quoting *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001)).

■ The Court is satisfied that the decision in *Marriott* meets all the requirements necessary to invoke collateral estoppel. The issue in the instant case is identical to the issue presented in *Marriott*. In both cases, Pourzal's allegations of civil conspiracy and prima facie tort were based on the claim that Marriott's acquisition of the Reef constituted a "plant closing" within the meaning of VIPCA. In *Marriott*, this Court determined, as a matter of law, that Marriott's action did not constitute a "plant closing" under the VICPA and that therefore, Pourzal "can prove no set of facts that would entitle him to relief [on his prima facie tort and civil conspiracy claims]". *Marriott*, 305 F. Supp. 2d at 548. Therefore, Prime has satisfied the first requirement for the invocation of the collateral estoppel doctrine.

■ The remaining prongs of the analysis need only a brief mention. This issue has actually been litigated as it was determined on a motion to dismiss for failure to state a claim.[1] RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. d (noting that an issue is actually litigated when "it is determined on a motion to dismiss for failure to state a claim"). The

---

[1] Prior iterations of the standard requirements for collateral estoppel have considered whether the issue was determined by a final and valid judgment. *See*, *e.g.*, *AMTRAK v. Pa. PUC*, 288 F.3d 519, 525 (3d Cir. 2002) (listing the finality requirement as factor for consideration in collateral estoppel cases).

Pourzal contends that the dismissal in *Mariott* of the civil conspiracy and prima facie tort claims should not be considered a final judgment because a live controversy remained in the case, so the order of dismissal was not appealable. Pourzal's argument, however, ignores the distinction between finality for purposes of appeals and for purposes of collateral estoppel: "[u]nlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable." *Henglein v. Colt Industries Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001) (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)). Indeed, finality in the context of collateral estoppel requires only that the decision be "sufficiently firm to be accorded conclusive effect." *Dyndul v. Dyndul*, 620 F.2d 409, 412, 17 V.I. 623 (3d Cir. 1980). Accordingly, this case would not be one that would escape collateral estoppel for lack of a valid, final determination on the merits.

determination that Marriott's acquisition of the Reef was not a "plant closing" was the basis for dismissing the prima facie tort and civil conspiracy claims in *Marriott. See Marriott*, 305 F. Supp. 2d at 548. Finally, Pourzal was represented by counsel in the previous litigation.

## 2. The Equitable Exceptions

■ Though the general rule of collateral estoppel may preclude a given claim, several equitable exceptions exist, which are designed to promote fairness as well as "the efficient use of private and public litigation resources." *AMTRAK v. Pa. PUC*, 288 F.3d 519, 525 (3d Cir. 2002). Pourzal contends that Count II survives because the following equitable exceptions to collateral estoppel are satisfied: (1) he could not, as a matter of law, have obtained review of the judgment in the initial action; (2) the issue is one of law, and a new determination is warranted to account for intervening changes in the applicable legal context or to otherwise avoid inequitable administration of the law; and (3) there is a clear and convincing need for a new determination of the issues. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 28(1), (2), (5).

■ The applicability of these exceptions depends on (1) whether there is "mutuality of estoppel," meaning whether both parties in the subsequent suit were also parties to the prior suit; and (2) whether the estoppel is [(a)] offensive (asserted by a plaintiff seeking to prevent re-litigation of issues which the defendant has previously litigated and lost) or (b) defensive (asserted by a defendant seeking to prevent re-litigation of issues that the plaintiff has previously litigated and lost). *Id.*

Cases involving non-mutual offensive estoppel present a unique potential for unfairness, because:

> a defendant may have had little incentive to defend the first action vigorously, "particularly if future suits [were] not foreseeable," the judgment relied upon may have been inconsistent with one or more previous judgments in favor of the defendant, or the second action may "afford[] the defendant procedural opportunities unavailable in the first action that could readily cause a different result."

*Jean Alexander Cosmetics, Inc.*, 458 F.3d at 248-249 (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330-31, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)) (internal citations omitted).

> Moreover, the use of non-mutual offensive collateral estoppel "does not promote judicial economy in the same manner as defensive use does" because it creates an incentive for plaintiffs "to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment."

*Id.*

In contrast, cases involving defensive or mutual collateral estoppel do not present the same potential for unfairness or inefficiency. Indeed, as the Supreme Court has explained:

> ... the authorities have been more willing to permit a defendant in a second suit to invoke an estoppel against a plaintiff who lost on the same claim in an earlier suit than they have been to allow a plaintiff in the second suit to use offensively a judgment obtained by a different plaintiff in a prior suit against the same defendant

*Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329-330, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971).

Prime (a non-party to the first action) has asserted collateral estoppel in an attempt to bar re-litigation of an issue that Pourzal has previously litigated and lost. This is therefore a case of non-mutual defensive collateral estoppel, which generally presents minimal risk of unfairness and actually works to promote efficient use of litigation resources. *See id.* at 330, 348 (noting that a case involving non-mutual defensive collateral estoppel may have prevented a mis-allocation of litigation resources and did not present any due process problems). Accordingly, there is little reason to stray from the general rule allowing defensive non-mutual collateral estoppel. *See Jean Alexander Cosmetics, Inc.*, 458 F.3d at 248 (holding that "[t]he predominant question in preclusion cases involving defensive or mutual collateral estoppel is whether the basic requirements for issue preclusion are satisfied.") Moreover, Pourzal has failed to explain why this case presents any particular potential for unfairness, or inefficiency that would warrant application of either of the three equitable exceptions he asserts.

Accordingly, the Court will grant Prime's motion and dismiss Count II of the second amended complaint.

## B. Enforcement of the Arbitration Award

In Count III of the complaint, Pourzal seeks confirmation of its arbitration award from 2002, and seeks damages for Prime's alleged failure to comply with the award.

### 1. Confirmation of the Arbitration Award

Prime first argues that Pourzal is precluded from seeking to confirm the arbitration award from 2002, because the statute of limitations has elapsed under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9(1947) ("Section 9").[2]

Other circuits have held that the FAA supplements, but does not supplant, common law procedures to confirm an award. *See Val-U Constr. Co. of S.D. v. Rosebud Sioux Tribe*, 146 F.3d 573, 581 (8th Cir. 1998); *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148 (4th Cir. 1993); *Ky. River Mills v. Jackson*, 206 F.2d 111, 120 (6th Cir. 1953); *see also In re Consolidated Rail Corp.*, 867 F. Supp. 25 (D.D.C. 1994) ("[Section] 9 was meant to supplement and not preclude other remedies, confirmation under [Section] 9 is not mandatory and as such a party is not prevented from using either state law or common law procedures to confirm an award").

A breach of contract action at common law is a recognized procedure to confirm an arbitration award. See *Ky. River Mills*, 206 F.2d at 120; *Kassab v. Marantette*, 1998 U.S. Dist. LEXIS 21190, at 6 (E.D. Mich., Dec. 30, 1998) (permitting plaintiff to confirm the arbitration award under common law theories of breach of contract); *Consol. Rail Corp.*, 867 F. Supp. at 28; *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*,

---

[2]  Section 9 of the FAA provides:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9 (1947).

452 F. Supp. 573 (D. Neb. 1978); *Amalgamated Meat Cutters & Butcher Workmen v. Penobscot Poultry Co.*, 200 F. Supp. 879 (D.Me. 1961).

In *Ky. River Mills*, the Sixth Circuit declined to bar an action under common law to confirm an arbitration award after concluding that Congress intended to supplement, not replace already existing confirmation procedures. The Sixth Circuit held that since Section 9 does not provide the only remedy for enforcing an arbitration award, a party is not precluded from using other methods of confirmation such as theories under common law. *See id.* at 111.

In its opinion, the Sixth Circuit quoted the first two sentences of Section 9 and stated:

> The language of the foregoing section as to application to the court for an order is not mandatory, but permissive. A party may, therefore, apply to the court for an order confirming the award, but is not limited to such remedy. Prior to the enactment of the United States Arbitration Act, an action at law on the award was the proper method of enforcing it. Enforcement of the award in this case is not barred by the one-year limitation contained in Section 9 of the Act, which provides for summary remedy of confirmation of the award by the court.

206 F.2d at 120.

The Sixth Circuit's position, while not controlling in this Circuit, is persuasive and in accord with this Court's view that a common law breach of contract action may be a method by which a party may seek enforcement of his arbitration award. Therefore, Prime's motion to dismiss will be denied as it relates to confirmation of the arbitration award.[3]

## 2. Damages Related to the Arbitration Award

In addition to seeking confirmation of the arbitration award, Count III of the Complaint requests damages related to the the award. Specifically, Pourzal seeks to recover $9,410.12 in interest on the arbitration award, which allegedly accrued during the ten-day period it took Prime's

---

[3] The Court has ruled that the plaintiff may seek confirmation of the arbitration award by an action to enforce it. Therefore, we need not decide whether plaintiff's January 13, 2002, motion seeking leave to amend its complaint is a motion to confirm the arbitration award within the meaning of the FAA.

uncertified check to clear. Pourzal also seeks damages of $95,200 for Prime's alleged three-month delay in "allowing [Pourzal] to exercise those options and thereafter unreasonably delay[ing] forwarding the stock to plaintiff's broker." Compl. ¶¶ 31-32.

Essentially, Pourzal seeks relief for a cause of action that has been unrecognized by any federal court of which this Court is currently aware.

■Additionally, when it comes to arbitration matters, the role of district courts is limited to two primary functions: One is to determine whether the matter is arbitrable in the first instance, and the second is to determine whether the arbitration award should be vacated or confirmed and whether enforcement should follow. *John Hancock Mutual Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998). Indeed, a strong federal policy in favor of arbitration counsels district courts against deviating from this limited scope of review with respect to arbitration awards. *Id.* at 137.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Prime's motion to dismiss Count II, and deny Prime's motion to dismiss Count III to the extent it relates to confirmation of the arbitration award, but grant Prime's motion to dismiss that portion of Count III which seeks relief in the form of damages. An appropriate judgment follows.