252 F.3d 670 (3rd Cir. 2001)
 DEAN DUNGAN, APPELLANT
v.
RODNEY E. SLATER, SECRETARY, UNITED STATES OF AMERICA DEPARTMENT OF TRANSPORTATION; JANE GARVEY, ADMINISTRATOR, UNITED STATES OF AMERICA FEDERAL AVIATION ADMINISTRATION
 No. 00-1128
 UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
 Submitted Under Third Circuit LAR 34.1(a) March 13, 2001
Opinion Filed March 19, 2001
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA D.C. Civil No. 99-CV-2376 District Judge: The Honorable Raymond J. BroderickDuane D. Werb, Esquire Werb & Sullivan 300 Delaware Avenue, 10th Floor P.O. Box 25046 Wilmington, Delaware 19899; Joseph M. Lamonaca, Esquire Suite 303 G & M Building Chadds Ford, Pennsylvania 19317 Attorneys for Appellant Annetta F. Givhan, Esquire Assistant U.S. Attorney Office of the United States Attorney 615 Chestnut Street Philadelphia, Pennsylvania 19106; Marleigh D. Dover, Esquire U.S. Deputy Attorney General Room 3127 United States Department of Justice 10th & Pennsylvania Avenue, N.W. Washington, D.C. 20530; William A. Rivera, Esquire U.S. Deputy Attorney General United States Department of Justice Federal Programs Branch 901 E Street, N.W. Washington, D.C. 20004 Attorneys for Appellees
 Mansmann, Barry, and Cowen Circuit Judges
 OPINION OF THE COURT
 Barry, Circuit Judge.
 
 
 1
 Dean Dungan appeals from the District Court's grant of summary judgment to all defendants in an action in which Dungan alleges that the defendants discriminated against him on the basis of age and violated his constitutional rights to due process and equal protection. Because we agree with the District Court that Dungan's complaint did not state a cause of action under either the Age Discrimination in Employment Act, 29 U.S.C. S 621 et seq., or the Fifth Amendment, we shall affirm the judgment of the District Court.
 
 BACKGROUND
 
 2
 Dungan began working as an air traffic controller (ATC) in 1974. ATCs at major airports in the U.S. are employees of the Federal Aviation Administration (FAA), an agency of the Department of Transportation (DOT). Like all ATCs who were hired between 1972 and 1987, Dungan was a member of the Civil Service Retirement System (CSRS). 5 U.S.C. S 8301 et seq. The CSRS required that an ATC "shall be separated from service on the last day of the month in which he [or she] becomes 56 years of age." 5 U.S.C. S 8335(a). The Secretary of Transportation, however, was given the discretion to permit an A TC "having exceptional skills and experience" to work until age sixty one. Id. The CSRS compensated ATCs for this early mandatory retirement by providing them with more generous benefits than were received by other federal employees.[1]
 
 
 3
 In 1981, thousands of ATCs who were members of the Professional Air Traffic Controllers Organization (PATCO) went on strike. Dungan did not join this strike. The striking PATCO members were fired by President Reagan, who barred them from working in any positions with the FAA. In August 1993, President Clinton issued an order permitting the former strikers to be rehired as ATCs. Some undetermined number of former PATCO members have been rehired.
 
 
 4
 In 1987, Congress adopted the Federal Employee Retirement System (FERS), 5 U.S.C. S 8401 et seq., which replaced the CSRS for many employees, including ATCs, hired after that point. While the FERS changed the retirement scheme for federal employees in many ways, the change most relevant to this case is that it modified the mandatory retirement age for ATCs. Under the FERS, an ATC is not required to retire until reaching twenty years of service or age fifty-six, whichever came later . 5 U.S.C. S 8425(a). Thus, an ATC who entered service after age thirty-six would be permitted to work past age fifty-six. The FERS continued to give the Secretary of Transportation the discretion to allow an ATC to work until reaching age sixty-one. Id. The retirement of ATCs who were hired before 1987 continues to be governed by the CSRS, although they were given opportunities to change their enrollment from the CSRS to the FERS. Similarly, PATCO members who had been covered by the CSRS and were rehired after President Clinton's order in 1993 were permitted to choose between the two retirement programs. It is undisputed that some of the rehired PATCO ATCs are being permitted to work past age fifty-six.
 
 
 5
 On June 15, 1998, well before his fifty-sixth birthday, Dungan wrote to his division manager seeking a waiver of the mandatory retirement age so that he could work until age sixty-one. Pursuant to the statutory grant of authority contained in 5 U.S.C. S 8335(a), the Secretary of Transportation had delegated authority to grant such waivers to the Administrator of the FAA. 49 C.F.R. S 1.45(a). The Administrator has adopted an internal procedure under which any waiver request must be reviewed by several intermediate officials before being considered by the Administrator and the Secretary. If any one of those intermediate officials does not approve the request, it is automatically denied. In October 1995, the F AA announced that for the foreseeable future, requests for waivers would not be forwarded to the Administrator, effectively cutting off any possibility of seeking an extension past the mandatory retirement age. Consistent with this policy, Dungan's waiver request was denied by the regional manager.
 
 
 6
 On May 7, 1999, Dungan filed a four-count complaint in the District Court. Count I alleged that the Secretary violated the Age Discrimination in Employment Act (ADEA) by requiring Dungan to retire at age fifty-six while allowing other ATCs to work past age fifty-six. In Count II, Dungan contended that the Administrator violated the ADEA by refusing to submit Dungan's waiver request to the Secretary. In Count III, Dungan claimed that the Secretary violated his Fifth Amendment rights to due process and equal protection by refusing to consider his waiver request and by forcing him to retire at age fifty-six while allowing other ATCs to work past that age. Finally, Count IV alleged that the Administrator violated Dungan's due process rights by refusing to forward his waiver request to the Secretary. Although this complaint was styled as a class-action, the District Court held all class-related decisions in abeyance until motions to dismiss or for summary judgment could be considered.
 
 
 7
 On February 24, 2000, the District Court granted defendants' motion for summary judgment on all counts. In a twenty-three page opinion, the District Court determined that the ADEA did not apply to ATCs, that Dungan had no due process right to have his waiver request considered by the Secretary, and that the different retirement ages for different ATCs were rationally related to a legitimate government purpose and did not violate Dungan's right to equal protection. The District Court and this Court both subsequently denied Dungan's requests for injunctive relief to prevent his termination while his appeal was pending.
 
 
 8
 In March 2000, Dungan reached age fifty-six. Under the provisions of the CSRS, he was required to retire at the end of that month. Apparently, however, he did not timely receive the required sixty-day notice of termination, and he was permitted to work until June 30, 2000.[2]
 
 DISCUSSION
 
 9
 On appeal, Dungan disputes the District Court's resolution of each of his claims. He also asserts that the District Court erred by not providing him with the pre-trial procedures mandated by the local rules of the Eastern District of Pennsylvania, and by not deciding the issue of class certification.
 
 A. ADEA Claims
 
 10
 In evaluating Dungan's ADEA claims, the District Court noted that while the federal government had been made subject to the act in 1978, see 29 U.S.C.S 633a(a), Congress still reserved the power to statutorily impose mandatory retirement ages that would otherwise conflict with the ADEA. Johnson v. Mayor and City Council of Baltimore, 472 U.S. 353, 357 (1985). Thus, the District Court properly held that the provision of the CSRS requiring ATCs to retire at age fifty-six did not violate the ADEA.
 
 
 11
 Dungan argues, however, that he is not disputing the validity of the mandatory retirement age, but is instead challenging the fact that other ATCs, and in particular the rehired PATCO members, are being allowed to work past age fifty-six. This argument overlooks the fact that the mandatory retirement age of all ATCs is dictated by legislation properly enacted by Congress, regardless of whether the ATCs in question are members of the CSRS or the FERS. It would be paradoxical for this Court to hold that the FAA does not violate the ADEA when it requires an ATC to retire at age fifty-six under the rules of the CSRS, but does violate the ADEA when it permits an A TC to work past age fifty-six consistent with the dictates of the FERS.
 
 
 12
 Because Congress explicitly authorized both mandatory retirement programs complained of by Dungan, they are outside the scope of the ADEA. On that basis, the District Court properly granted summary judgment to the defendants on Counts I and II of Dungan's complaint. Because this determination is dispositive of the issue, we shall not discuss the alternative grounds for summary judgment offered by the District Court.
 
 B. Equal Protection
 
 13
 Dungan also contends that the Secretary has violated his Fifth Amendment right to equal protection by forcing him to retire at age fifty-six while allowing other ATCs to work past that age. In particular, he claims that the rehired PATCO members are being given unconstitutional preferential treatment because they are allowed to work past age fifty-six.[3] Because the different treatment that Congress mandated for different ATCs is rationally related to a legitimate government purpose, it does not violate the Fifth Amendment.
 
 
 14
 If federal government action creates distinctions between classes of people, and that action does not impermissibly interfere with fundamental constitutional rights or burden a suspect class, that action does not violate the Fifth Amendment so long as it is rationally related to a legitimate government purpose. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312-13 (1976). There is no allegation in this case that the differing treatment of ATCs under the two retirement systems interferes with any fundamental right. Further, the Supreme Court has determined that classifications based on age do not burden a suspect class. Murgia, 427 U.S. at 313-14. In the present case, the two retirement systems are best seen as creating a distinction based on the particulars of individuals' employment, because the question of whether an ATC will be permitted to work past age fifty-six is determined entirely by the retirement system in which he or she is enrolled. Vance v. Bradley, 440 U.S. 93, 97 n.10 (1979) ("Since the age factor is present in both groups, the gravamen of appellees' claim [is that the statute] discriminates on the basis of job classification").
 
 
 15
 The distinction created between two groups of ATCs by the CSRS and the FERS is clearly rationally related to a legitimate government purpose. The adoption of the FERS altered the method of calculating annuities for retired ATCs, and had the effect of reducing the annuity to which an average ATC would be entitled.[4] In that context, it is perfectly logical that Congress would choose to grant every ATC an opportunity to earn at least twenty years of service credit, even if that meant letting some ATCs work past age fifty-six. It is also logical that Congress would choose not to force ATCs who were enrolled in the CSRS to transfer to the FERS, which for some ATCs would have the effect of retroactively reducing benefits. Instead, it permitted ATCs covered by the CSRS to select the plan in which to enroll. Regardless of Congress's precise motives, the Supreme Court has noted that federal retirement systems "are packages of benefits, requirements, and restrictions serving many different purposes. When Congress decided to include groups of employees within one system or the other, it made its judgments in light of those amalgamations of factors." Vance, 440 U.S. at 109.
 
 
 16
 Dungan's claim that the rehired PATCO members are being given some kind of impermissible preference also fails. It is true that when the PATCO members were fired, they were subject to the mandatory retirement age of the CSRS, as was Dungan. When they were rehired, however, they were permitted to select between the two plans. Dungan had been given this same choice in 1987.[5] Because some of these rehired ATCs elected to be enrolled in the FERS and because they had fewer than twenty years of service at age fifty-six, they are being allowed to work to an older age than they would have had they never gone on strike. This difference is caused not by their status as strikers, however, but because they had a break in service. An ATC who had a similar break in service for other reasons would have received the same benefit.
 
 
 17
 The Administrator and the Secretary are required to impose different mandatory retirement schemes on different ATCs due to a legislative mandate. Because that mandate is rationally related to a legitimate government purpose, it does not violate Dungan's right to equal protection.
 
 C. Due Process
 
 18
 Dungan's last substantive claim is that the Administrator and the Secretary denied him his Fifth Amendment right to due process by denying his request for a waiver from the mandatory requirement provisions of the CSRS. This argument fails because Dungan had no property interest in, or legitimate expectation of, a waiver of the mandatory retirement rules.
 
 
 19
 Before any process is due under the Fifth Amendment, a claimant must demonstrate that there has been a deprivation of an interest in life, liberty, or property. Matthews v. Elderidge, 424 U.S. 319, 332 (1976). There is generally not a property interest in continued public employment unless a claimant can demonstrate a "legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972).
 
 
 20
 Dungan cannot maintain that he had any legitimate expectation to continued employment as an ATC past age fifty-six, or even any expectation that his waiver request would be submitted to the Secretary. The governing statute states that the Secretary "may exempt" an ATC from mandatory retirement. 5 U.S.C. S 8335(a). This clearly indicates that the decision as to whether to grant a waiver is discretionary. Further, the Secretary is empowered to make this decision "under such regulations as he [or she] may prescribe." Id. The regulations that have been adopted require that an application be approved at every level before it is submitted to the Administrator and the Secretary. Lack of approval at any level functions as a denial of the application. The decision that no waiver requests would be approved was clearly within the discretionary power of the Secretary. Dungan claims that the refusal to consider his request was arbitrary and capricious, but he overlooks the fact that the Secretary is not required to consider any waiver request. In fact, the evidence shows that rather than being arbitrary and capricious, the refusal to consider requests has been consistently applied since the policy was announced in 1995 and that no waivers have been granted since that time.
 
 
 21
 Because Congress granted broad discretion to the Secretary to make decisions about waivers, Dungan had no property interest in receiving a waiver or even in having his request considered by the Secretary. In the absence of such a property interest, no process was due under the Fifth Amendment and Dungan's constitutional rights were not violated.
 
 D. Pre-Trial Procedures
 
 22
 Finally, Dungan claims that the District Court erred by refusing his request for certain pre-trial procedures and by not making any class-related decisions. Because we will affirm the grant of summary judgment on the merits, we need not consider this argument.
 
 CONCLUSION
 
 23
 For the foregoing reasons, the judgment of the District Court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 For example, an ATC with twenty years of service was permitted to retire with a pension at age fifty, 5 U.S.C. S 8336(e), while most federal employees would have to achieve age sixty before being given a pension after twenty years of service. 5 U.S.C. S 8336(b). Similarly, ATCs were guaranteed a minimum pension payment of 50% of their average salary. 5 U.S.C. S 8339(e). Thus, an ATC retiring after twenty years of service would receive a 50% pension, much more generous than the 36.25% that would be received by a federal employee governed by the general rules. 5 U.S.C. S 8339(a).
 
 
 [2]
 Although there is no evidence in the record before this Court, we assume that Dungan received the required notice on or before May 2, 2000.
 
 
 [3]
 It is clear from the briefs and from the record that Dungan feels a great deal of indignation over what he perceives as the preferential treatment being given to the former strikers. In 1981, Dungan chose to obey the law and refused to join the PATCO strike. Now he has been forced to retire at age fifty-six while some ATCs who, in his view, broke their faith with the FAA are being allowed to work past that age. It is understandable that he feels anger and frustration, but the law can provide no relief.
 
 
 [4]
 Thus, as noted earlier, under the provisions of the CSRS, an ATC eligible for retirement after twenty years would receive a guaranteed 50% pension, 5 U.S.C. S 8339(e), while under the FERS the same ATC would receive only a 34% pension. 5 U.S.C. S 8415(d). Of course, it is possible that Social Security and voluntary Thrift Savings Plan benefits would compensate for this difference.
 
 
 [5]
 As the District Court noted, even if Dungan had elected to enroll in the FERS, he would have been forced to retire at age fifty-six because he already had twenty years of service.