**Janet JORDAN, et al., Plaintiffs,**

v.

**Lee SOLOMON, et al., Defendants.**

**No. 01–525.**

United States District Court,
D. New Jersey.

Oct. 19, 2001.

Uffelman, Rodgers, Kleinle & Mets, by James M. Mets, Morristown, NJ, for Plaintiffs.

Office of Camden County Counsel, by M. Lou Garty, Camden, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

Presently before the Court is the Motion to Dismiss of Defendants Lee Solomon and the Office of the Camden County Prosecutor. In this § 1983 action, Plaintiff Janet Jordan, an Investigator with the Camden County Prosecutor's Office, claims that she was demoted in violation of the Due Process Clause of the 14th Amendment by Solomon, the Camden County Prosecutor. Jordan contends that this demotion deprived her of her "liberty" to pursue her occupation and her "property" interest in her former position and that she was consequently entitled to notice and a hearing prior to being demoted. Although under New Jersey law county investigators serve "at the pleasure" of the Prosecutor, N.J.S.A 2A:157–10, Plaintiff contends that she had a protectable property interest in her position by virtue of language allegedly contained in the Office's "Standard Operating Procedures" (SOPs) and its Collective Bargaining Agreement (CBA) with the Camden County Superior Officers Association, Plaintiff's union. However, because any promises made by Solomon or the Prosecutor's Office regarding the job security of county investigators are rendered unenforceable by the mandates of New Jersey law and because Plaintiff's demotion did not constitute a deprivation of any cognizable liberty interest protected by the Due Process Clause, Plaintiff's federal constitutional claims will be dismissed. Further, because those claims constitute the entirety of her federal cause of action, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims and will remand the case to the New Jersey Superior Court.

### I.

In 1981, Janet Jordan was hired as an Investigator by the Camden County Prosecutor's Office. She served in that capacity until March 1992, when she was promoted to the position of Senior Investigator. On October 19, 1998, Jordan was again promoted, this time to the position of Sergeant II. (Compl. ¶¶ 6–8).

In late November 1999, Plaintiff was summoned to a meeting with Solomon and two other high-ranking office officials. (Compl. ¶ 12). Solomon informed Plaintiff at the meeting that she was being transferred and demoted back to Senior Investigator. (Id.). Plaintiff objected and, pursuant to the provisions of the CBA, filed a grievance contesting her demotion. (Id. at ¶ 16). According to Plaintiff, "without affording [her] the opportunity to a hearing or to be heard", she was told, by memorandum, that Solomon was not inclined to change his decision. (Id.) In January 2000, Plaintiff and her attorney were given an opportunity to meet with Solomon to discuss the charges against her. (Id. at ¶ 18). During those discussions, Solomon apparently agreed to review Plaintiff's case and render a decision. Six months later, Solomon issued his decision, declining to reinstate Plaintiff to her Sergeant's position. (Id. at ¶¶ 18, 19).

Plaintiff filed the instant suit in the Superior Court of New Jersey, Law Division, asserting a number of state law claims in addition to the instant due process claims under 42 U.S.C. § 1983. Defendants removed the case to federal court on January 20, 2001. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1367 and 1441.

### II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the court will

accept all of the allegations of the complaint as true. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996). Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although the court must assume as true all facts alleged, "[i]t is not ... proper to assume that the [plaintiff] can prove any facts that it has not alleged." *Associated Gen. Contractors of Calif., Inc., v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Finally, when "[c]onfronted with [a 12(b)(6) ] motion, the court must review the allegations of *fact* contained in the complaint; for this purpose the court does not consider conclusory recitations of law." *Commonwealth of Pennsylvania v. PepsiCo, Inc.*, 836 F.2d 173, 179 (3d Cir.1988) (emphasis added).

### III.

■ According to Plaintiff, there have been promulgated in the Office of the Camden County Prosecutor a number of "Standard Operating Procedures" (SOPs) which govern the conduct of employees and the operation of the Office. (Compl. At ¶ 8). When Plaintiff was demoted, she was given a Notice of Disciplinary Proceeding which set forth five alleged violations of these SOPs: failure to perform the duties of her position, insubordination, incompetence, neglect of duty and conduct unbecoming a member of the staff. (Pl. Br. at 3). In addition to setting forth the obligations of employees, the SOPs apparently establish a system of "progressive discipline" and state that "in all disciplinary proceedings the applicable standard of proof shall be a preponderance of the evidence." (Compl. At ¶ 8). Plaintiff appears to contend that these provisions, in conjunction with provisions of the CBA providing for a "three-step" grievance procedure, entitle Prosecutor's Office employees to be disciplined only for cause and to an opportunity for a formal hearing before any such discipline is imposed.[1] Defendants respond to Plaintiff's contentions by arguing that any contractual obligations created by the CBA or SOPs are inconsis-

---

1. It should be noted at the outset that it is difficult to determine to what, exactly, Plaintiff was entitled by the SOPs and the CBA, as the Court has not been provided with the text of many of the relevant provisions. Indeed, it is by no means clear that the documents created any contract-like entitlements and that Plaintiff would have a protectable property interest even in the absence of any contrary statutes. For instance, while Plaintiff quotes SOP 13–1, which states that the standard of proof at disciplinary hearings is a preponderance of the evidence, she does not discuss any provisions relating to the situations in which such a hearing is required. Although it appears that it is Plaintiff's position that such a hearing is required in all cases where disciplinary action is contemplated, there is no discussion of the basis for this belief. Further, the grievance procedure contained in the CBA, on which Plaintiff in part relies, provides for an appeal to the Prosecutor, whose decision "shall be final." If the Prosecutor's discretion in making this decision was not constrained in any way by the SOPs (the only constraint Plaintiff points to is a requirement that the Prosecutor's application of the SOPs be "equitable"), then Plaintiff can have no claim of "legitimate entitlement" to her position. Complicating the issue even further is that the SOPs and the progressive discipline policy to which Plaintiff claims she was entitled appear to apply only to "minor disciplinary infractions." (Compl.¶¶ 9, 11). Plaintiff, however, provides no evidence of the specific nature of her alleged infractions and whether the protections of the SOPs even applied to her case. However, given that these issues arise on a 12(b)(6) motion, the Court will assume for the purposes of the instant motion that the SOPs and the CBA did purport to confer an entitlement to discipline only for cause.

tent with the statutory requirement that county investigators serve "at [the Prosecutor's] pleasure and subject to removal by him", N.J.S.A. 2A:157–10, and are therefore unenforceable.[2]

It is well-settled that "the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see also, Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Accordingly, before the issue of "what process is due" can be reached, the Court must first find that Plaintiff suffered a deprivation of a cognizable liberty or property interest. *See, e.g., Unger v. National Residents Matching Program,* 928 F.2d 1392, 1395 (3d Cir.1991) ("Application of this prohibition requires a familiar two stage analysis . . .") (quoting *Robb v. City of Philadelphia,* 733 F.2d 286, 292 (3d Cir.1984)).

"There is generally not a property interest in continued public employment unless a claimant can demonstrate a 'legitimate claim of entitlement to it.' " *Dungan v. Slater,* 252 F.3d 670, 676 (3d Cir.2001) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701); *see also Latessa v. New Jersey Racing Commission,* 113 F.3d 1313, 1318 (3d Cir.1997) ("To have a property interest in a job or job benefit, an employee must have a legitimate claim of entitlement, not just a unilateral expectation."). Indeed, "the Supreme Court has held that a public employee who has no statutory or contractual entitlement to his job has no property interest. Thus, an employee hired at will . . . may not prevail on a claim that loss of

the employment constituted deprivation of property." *Battaglia v. Union Cty. Welfare Board,* 88 N.J. 48, 56, 438 A.2d 530 (1981) (citing *Roth* ). Although it is by no means clear, because the issue is arising on a motion to dismiss, the Court will assume that Plaintiff can show that the CBA and SOPs purported to afford her a "contractual" entitlement to her Sergeant's position.

■ The issue, then, is whether these contractual entitlements are enforceable given the constraints placed upon the Prosecutor by statute. As the Supreme Court has noted, "property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. Thus, even if the SOPs and CBA did purport to create an entitlement to for-cause discipline, if such entitlements are invalid under state law, no protectable property interest exists. The objective language of the alleged contract and the subjective understandings of individual employees are irrelevant as each employee in the public service is presumed to have accepted his or her position with "full knowledge of the law." *See Walsh v. State of New Jersey,* 290 N.J.Super. 1, 15, 674 A.2d 988 (1996) (Skillman, J., dissenting) (citing *Shalita v. Township of Washington,* 270 N.J.Super. 84, 91, 636 A.2d 568 (1994)).

The New Jersey Supreme Court has held that statutes such as the one at issue in this case "unambiguously create an at-will employment relationship" and that such relationships are "not *ipso facto* contractual in character . . . but [are] instead

---

2. N.J.S.A. 2A:157–10 states that county investigators are "in the unclassified service of the civil service" and are appointed by the County Prosecutor "to serve at his pleasure and subject to removal by him, and to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law."

controlled by the statutes pursuant to which the public official has been appointed." *Golden v. County of Union,* 163 N.J. 420, 427, 430, 749 A.2d 842 (2000) (citing *Walsh,* 290 N.J.Super. at 15, 674 A.2d 988 (Skillman, J., dissenting)). In *Golden,* for instance, the Court, in interpreting a statute (N.J.S.A.2A:158–15) the operative language of which was virtually identical to that involved in this case, determined that "in view of the clear statutory language establishing plaintiff's at-will employment status, it is not necessary for us to address whether a public agency may be bound by an implied contract or whether the manual here represented such a contract. The statute trumps whatever implied contract may have existed between the parties." 163 N.J. 420, 431, 749 A.2d 842. Like the statute applicable to Jordan, the law at issue in *Golden* provided that individuals in Golden's position serve "at the pleasure of" the County Prosecutor. N.J.S.A. 2A:158–15. Indeed, the parties agree that "it is undisputed that [§ 157–10] does not allow a prosecutor to negotiate limits on his right to hire and discharge investigators." (Pl. Br. at 8). The parties differ, however, as to the effect of the statute on the Prosecutor's ability to establish procedural entitlements relating to employment decisions other than removal. While Defendants argue that the New Jersey Supreme Court's decisions in *Golden* and *Walsh* are dispositive, Jordan contends that since "there are no court decisions regarding the negotiability of contractual protections regarding a prosecutor's decision to take disciplinary action against an investigator short of termination," (Pl. Br. at 8), the decision of the New Jersey Public Employee Relations Commission in *In the Matter of Camden County Prosecutor and PBA Local 316,* P.E.R.C. No. 96–32,

21 New Jersey Pub. Employee Rep. ¶ 26243 (Nov. 1, 1995) (holding that N.J.S.A. 2A:157–10 "does not specifically address disciplinary actions besides removal [and] does not prohibit negotiations over other disciplinary actions") should control. (*Id.* at 9).

While the Public Employment Relations Commission may, as Plaintiff asserts, "be the State Agency that is charged ... with determining the scope of negotiations" (Pl. Br. at 9), the New Jersey Supreme Court is the final authority in interpreting New Jersey law and its decisions in that regard are controlling.

In *Walsh v. State of New Jersey,* 290 N.J.Super. 1, 674 A.2d 988 (1996), a panel of the New Jersey Superior Court, Appellate Division, held that representatives of the New Jersey Office of the Public Defender had made a binding promise to an assistant deputy public defender when they told him that he would be promoted within one year of his hiring. 290 N.J.Super. at 12, 674 A.2d 988. Judge Skillman, however, dissented, arguing that pursuant to N.J.S.A. 2A:158A 6 [3] "the Public Defender has unfettered discretion in determining whether to hire, discharge, transfer, demote or withhold promotion from an Assistant Deputy" and that the promises of his subordinates were therefore invalid. *Id.* at 13, 674 A.2d 988. On appeal, the New Jersey Supreme Court unanimously reversed the panel's holding "substantially for the reasons expressed in Judge Skillman's dissenting opinion." 147 N.J. 595, 689 A.2d 131.

In its decision in *Camden County Prosecutor,* the Public Employment Relations Commission determined that "N.J.S.A. 2A:157–10 does not address disciplinary

---

**3.** This provision provides that assistants "serve at the pleasure of the Public Defender and shall receive such salar[y] as he shall from time to time designate." N.J.S.A. 2A:158A–6.

actions besides removals so it does not prohibit negotiations over other disciplinary actions" and that the CBA provision at issue thus "d[id] not appear to conflict with that statutory provision." 21 NJPER ¶ 26243. Judge Skillman's opinion makes clear, however, that a statute which dictates that one employee serves "at the pleasure" of her supervisor does not limit that supervisor's discretion to decisions about hiring and firing. As noted, Judge Skillman expressly stated that the "unfettered discretion" of the Public Defender extends to decisions regarding "whether to hire, discharge, transfer, demote or withhold promotion." *Walsh,* 290 N.J.Super. at 13, 674 A.2d 988. Indeed, this determination was central to the ultimate disposition of *Walsh,* as the case did not involve discharge, but rather a failure-to-promote. *Id.*

Plaintiff argues that the rationale of *Walsh* is inapposite because the "case did not involve any procedural restrictions on the right to promote but rather an oral agreement to promote" and because "the statute in Walsh is much broader in its limitations than N.J.S.A. 2A:157–10, as it even restricts negotiations on salary levels." (Pl. Br. at 8). However, these claimed distinctions are irrelevant to the real issues at hand. Here, as in *Walsh,* the crucial issue is the extent to which a Prosecutor may limit the at-will nature of his or her relationship with subordinates. As such, there is no real distinction between a promise to comply with a given procedure, the result of which is likely to be contrary to the Prosecutor's wishes, and a promise to go forward with an action the Prosecutor no longer wishes to take. In both cases, the end result is that the Prosecutor's statutorily-mandated discretion is constrained. Thus, there is no functional difference between the contractual provisions at issue in *Walsh* and those involved in this case.

Plaintiff's distinction between the authority granted by the Public Defender statute and the one implicated here does not appear to be much of a distinction at all. It is true that N.J.S.A. 2A:158A–6 does give the Public Defender control over the salary of his subordinates, but this doesn't make the statute any different from that involved in this case. Indeed, although the language is somewhat different, County Prosecutors, like Public Defenders, exercise control over the salaries of their subordinates, to wit, "the prosecutor of each of the several counties … may appoint such number of suitable persons [to be county investigators] … *at salaries not less than the minimum amounts.*" N.J.S.A. 2A:157–10 (emphasis added). In any case, the decision in *Golden* makes it clear that this additional grant of authority is irrelevant. In *Golden,* the Court noted that "the operative language [of the Public Defender statute] is similar to the text of [N.J.S.A. 2A:158–15]," even though the latter statute contains no salary-control provision. 163 N.J. at 433, 749 A.2d 842. The Court thus accepted the argument that the logic of Judge Skillman's opinion applied equally to defenses under § 2A:158–15. *See id.* ("We conclude that the principles espoused in *Walsh* … and the other cases in this area, together with the plain language of the statute, require judgment in favor of the defendants."). Accordingly, Judge Skillman's opinion in *Walsh* controls the issues in this case and Plaintiff therefore has no valid claim of entitlement to her position. Consequently, Plaintiff cannot maintain her claim that she was deprived of any legitimate property interest by her demotion.[4]

4. The nature of the Prosecutor's function and the purposes for which § 157–10 was enacted further demonstrate that Plaintiff cannot claim an entitlement to her position. As not-

## IV.

■ Plaintiff also contends that "the aforesaid actions of Defendants have deprived Jordan of her natural and unalienable rights of enjoying and defending her liberty interest in her position." (Compl. ¶ 31). The Supreme Court has recognized that, in some cases, an adverse employment action can constitute a deprivation of liberty protected by the Due Process Clause:

> Without a doubt [the liberty guaranteed by the 14th Amendment], denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

*Roth,* 408 U.S. at 572, 92 S.Ct. 2701 (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). However, as "it is the right to pursue a calling or occupation, and not the right to a specific job that is protected by the 14th Amendment," *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1259 (3d Cir. 1994) (citation omitted), Plaintiff must demonstrate that her ability to pursue her occupation generally was in some way compromised by Solomon's decision to demote her.

In order to establish a deprivation of a protected liberty interest, Plaintiff must show that Solomon's actions jeopardized her "good name, reputation, honor or integrity" or "imposed on [her] a stigma or other disability that foreclosed [her] freedom to take advantage of other employment opportunities." *Roth,* at 574, 92 S.Ct. 2701.

Plaintiff relies on *Nicoletta v. North Jersey Water Supply Comm.,* 77 N.J. 145, 390 A.2d 90 (1978) to bolster her contention that she will "be precluded from public employment" and has suffered "damage to her reputation." (Pl. Br. at 15–16). Her reliance is misplaced, however. In *Nicoletta,* the New Jersey Supreme Court found that a police officer discharged from employment by a water district possessed a protected liberty interest of which he could not be deprived without due process of law. 390 A.2d at 97–98. In reaching this decision, the Court relied on the fact that the removal of the plaintiff from his position "per se exposed him to potential disqualification from further public employment." *Id.* at 97. In this case, there is no such danger. Although Plaintiff asserts that she may be disqualified from further public employment based on her demotion, there is simply no support for this contention. In making her claim, Plaintiff appears to rely to N.J.A.C. 4A:4–6.1,[5] which provides that "a person may be

---

ed in *Golden,* "prosecutors occupy the foremost role in the enforcement of laws within their respective counties, second only to the Attorney General. Commensurate with that role and responsibility, the Legislature has provided prosecutors with wide authority to structure, maintain, and manage their offices." 163 N.J. at 433, 749 A.2d 842. Given this general policy, there is no reason to distinguish between decisions relating to hire and discharge and decisions regarding internal personnel matters. Decisions regarding the duties and responsibilities of the various employees within the Office have a tremendous impact on the day-to-day functioning of the Office and the administration of justice generally and are as integral to the functions of the Prosecutor's Office as are decisions relating to hiring and firing.

**5.** Plaintiff actually refers in her brief to N.J.A.C. 4A:1–8.14(b)(6), which is a section of the Code that does not exist. Plaintiff appears to have obtained her citation from the

denied examination eligibility or appointment [to a civil service position] when he or she ... has been removed from the public service for disciplinary reasons after an opportunity for a hearing." N.J.A.C. 4A:4–6.1(a)(5). By its very terms, § 4–6.1(a)(5) applies only to individuals who have previously been removed from the public service. Given that Plaintiff was demoted, not removed, she faces no potential disqualification from future employment and cannot rely on *Nicoletta* to vindicate her claimed liberty interest.[6]

█ The actions taken against Plaintiff in this case simply are not accompanied by any significant reputational or adverse employment consequences such that a liberty interest is implicated. First, the reasons for Plaintiff's demotion were communicated to her orally and were not publicly disclosed. In order for a plaintiff to demonstrate a harm to a liberty interest based upon statements or actions allegedly doing damage to her good name or reputation, there must be some likelihood of potential public discovery of the actions or statements complained of. *See Bishop v. Wood,* 426 U.S. 341, 348–49, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) ("Since the ... communication was not made public, it cannot properly form the basis for a claim that

petitioner's interests in his good name, reputation, honesty or integrity was thereby impaired."). Simply put, every adverse employment action taken against a public employee does not become a constitutionally-protected liberty deprivation simply because the plaintiff alleges that harm to her reputation could, in some way, shape or form, at some point in time, result.

Second, in *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Supreme Court addressed a case that was similar in many ways to this one. In determining that Siegert did not state a claim of an unconstitutional deprivation of liberty, the Court noted that:

> The statements contained in the letter [which allegedly defamed the plaintiff] would undoubtedly damage the reputation of one in his position, and impair his future employment prospects....But so long as the damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* [or § 1983] action.

500 U.S. at 234, 111 S.Ct. 1789; *see also, Stidham v. Peace Officer Standards and Training,* 2001 WL 1117059 (10th Cir. Sept.24, 2001).[7] As noted, Plaintiff in this

Court's opinion in *Nicoletta,* which referred to N.J.A.C. 4:1–8.14(b)(6). *Nicoletta,* however, was decided in 1978 and Title 4 of the Administrative Code was repealed when the former Department of Civil Service was replaced by the current Department of Personnel in 1986. *See* N.J.A.C. T.4A, Refs. & Annos. While the regulations pertaining to the Department of Personnel are codified in Title 4A, there is no Chapter 1–8.14(b)(6) in that Title. The provisions discussed in *Nicoletta* and to which Plaintiff appears to refer are now contained, with some changes, in N.J.A.C. 4A:4–6.1.

6. Section 4–6.1 is also limited to cases where an individual has been discharged "after a hearing." In making her argument, Plaintiff assumes *"arguendo"* that her "audience" with Solomon constituted a hearing for the

purpose of the statute. Plaintiff cannot have it both ways, however. If her meeting with Solomon was a "hearing", then she was afforded due process; if it was not, she does not run the risk of being disqualified from public employment.

7. The *Stidham* Court noted that "like Siegert, Appellant was not terminated incident to the alleged defamation; Appellant resigned, then sought government employment elsewhere. Like Siegert, Appellant was unable to obtain the type of government employment he sought, allegedly due to the defamatory statements." The Court then concluded that "the Supreme Court [in *Siegert*] has foreclosed a finding that this set of facts deprive one of a protected liberty interest." 2001 WL 1117059, at *7.

case was neither formally nor informally foreclosed from any future employment by Solomon's decision. In fact, Plaintiff is still employed by the Prosecutor's Office as a Senior Investigator. Thus, given that even specific evidence of informal adverse employment and reputational consequences has been deemed insufficient to state a claim for an unconstitutional deprivation of liberty without due process, *see Siegert* at 234, 111 S.Ct. 1789, Plaintiff's conclusory allegations of foreclosed job opportunities and damage to her reputation simply do not state a claim to a protectable liberty interest.

## V.

Because the existence of a protectable property interest depends on state law and because the decisions in *Golden* and *Walsh* make it clear that the at-will status of county investigators cannot be modified by contract, Plaintiff cannot demonstrate that she possessed any property interest deserving of due process protection. Further, because Plaintiff was not foreclosed from any further employment opportunities by her demotion, she was not deprived of any liberty interest within the meaning of the Due Process Clause of the 14th Amendment. Accordingly, the Court need not consider whether the procedures followed by Solomon in following through with Plaintiff's demotion constituted due process. Thus, while Plaintiff may have any of a number of valid state law claims, she does not have a federal cause of action against Solomon or the Camden County Prosecutor's Office.

For the reasons stated above, the Court will grant Defendants' Motion to Dismiss as to the claims contained in Counts One and Two of Plaintiff's Complaint. Further, given that it does not have original jurisdiction over any of the claims remaining in the case, the Court will decline to exercise its supplemental jurisdiction over the remaining claims and will, pursuant to 28 U.S.C. § 1367(c)(3), remand the case to the Superior Court of New Jersey. The Court will issue an appropriate order.