**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 09-4182

———

CULINARY SERVICE OF DELAWARE VALLEY, INC.;
MARTIN CAPLAN,

                                             Appellants

v.

BOROUGH OF YARDLEY, PENNSYLVANIA;
C. WILLIAM WINSLADE, individually and in his official capacity;
JAMES J. O'NEILL, individually and in his official capacity;
JAMES M. MCNAMARA, individually and in his official capacity;
JOSEPH HUNTER, individually and in his official capacity

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-01251)
District Judge:  Honorable Petrese B. Tucker

———

Argued on June 22, 2010

Before: AMBRO, CHAGARES, and VAN ANTWERPEN, *Circuit Judges*.

(File: June 30, 2010)

Steven Pachman, Esq.
Lathrop B. Nelson, III, Esq.  [**ARGUED**]
Sidney S. Liebesman, Esq.
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Avenue of the Arts
Philadelphia, PA 19109

*Counsel for Appellants*

Andrew G. Cassidy, Esq.
Christian P. LaBletta, Esq.
Donnelly and Associates, P.C.
1 West First Avenue, Suite 450
Conshohocken, PA 19428

*Counsel for Appellees*

Harry G. Mahoney, Esq.
Thomas C. Gallagher, Esq. [**ARGUED**]
Deasey, Mahoney, Valentini & North, Ltd.
Suite 3400, 1601 Market Street
Philadelphia, PA 19103

*Counsel for Appellees Borough of Yardley, C. William Winslade, James M. McNamara, and Joseph Hunter*

Joseph D. Goldberg, Esq.
Wendi D. Barish, Esq.  [**ARGUED**]
Tamara L. Rudow, Esq.
Weber, Gallagher, Simpson, Stapleton, Fires & Newby
2000 Market Street
Suite 1300
Philadelphia, PA 19103

*Counsel for Appellee James J. O'Neill*

—

OPINION OF THE COURT

—

VAN ANTWERPEN, *Circuit Judge*.

Culinary Services of Delaware Valley, Inc. ("Culinary Services") and Martin Caplan ("Caplan") (collectively referred to herein as "Plaintiffs") appeal from an August 21, 2009 order of the United States District Court for the Eastern District of Pennsylvania

2

dismissing their complaint and a September 29, 2009 order denying their motion for leave to file an amended complaint. We will affirm the dismissal of all of Plaintiffs' claims, except for the request for declaratory relief, which we will vacate and remand for further proceedings. We will also affirm the denial of the motion to amend.

## I. Factual and Procedural History

### A. Factual History[1]

Culinary Services distributes amusement, arcade, and redemption games to establishments licensed by the Pennsylvania Liquor Control Board ("PLCB"). Two of these games are at issue in this case: Red, White & Blue Game and HoldEm Poker Game (collectively referred to herein as the "Games").

The Red, White & Blue Game is a three-reel game in which the player must stop each reel to win. The HoldEm Poker Game is a five-reel game in which the first two reels each assign a card, and the player must stop the remaining reels to win. Plaintiffs maintain that the Games do not function in the same manner as traditional slot machines because they do not utilize random number generators, outcomes are not predetermined, and players must use skill to stop the reels to succeed. Thus, Plaintiffs contend that the use of skill predominates over chance in the Games.

On March 7, 2008, Plaintiffs entered into an agreement with the Knowles-Doyle

---

[1] The facts in this section are derived from Plaintiffs' original complaint, which the District Court dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and (7).

American Legion in Yardley, Pennsylvania (the "Yardley American Legion"). The Agreement provided that the Yardley American Legion would lease the Games from Culinary Services in exchange for fifty-percent of the net revenue from the Games. The Agreement also provided for automatic termination "immediately upon notice by authorities that the games are prohibited for any reason." (App. at 32.)

Before entering into the Agreement, Plaintiffs sought the opinions of the Pennsylvania Gaming Control Board ("PGCB") and PLCB regarding the legality of the Games – the PGCB did not respond, and the PLCB did not offer an opinion on their legality. Plaintiffs then consulted the Pennsylvania State Police's Bureau of Liquor Code Enforcement ("BLCE"), which despite inspecting the Games, offered a "no comment" opinion.[2]

After entering into the Agreement, but before installing the Games, Caplan informed the local police chief, James J. O'Neill ("Chief O'Neill"), of his intention to install the Games and of the BLCE's "no comment" opinion. After Plaintiffs installed the Games, Borough Manager C. William Winslade ("Manager Winslade") informed the board of directors of the Yardley American Legion that the Games had been "deemed illegal by Yardley Borough, Yardley Borough Police Department, and the Pennsylvania

---

[2] It is unfortunate that the Pennsylvania state entities, agencies, and officials did not issue an opinion on the legality of the Games. Such an opinion, reaching either conclusion, would likely have prevented the set of events that transpired in the absence of any guidance whatsoever. Plaintiffs clearly made significant efforts to obtain such an opinion, only to be rebuffed.

State Police." (*Id.* at 34.)

Shortly thereafter, Manager Winslade issued an official notification to the Yardley American Legion that "after careful investigation by Police Chief O'Neill it has been deemed that machines you have are in [sic] illegal." (*Id.* at 35.) The notification stated that "Chief O'Neill's investigation included discussions with Commander Rackovich of the Quakertown Barracks of the PA State Police and Special Investigator Smith of the PA State Police." (*Id.*) Plaintiffs contend that Manager Winslade, Chief O'Neill, and Commander Rackovich never personally inspected the Games and that each lacks the expertise or training to assess their legality. Further, Investigator Smith allegedly disclaimed any personal knowledge or experience with the Games and confirmed he would thus be unable to issue an opinion regarding their legality.

The official notification effectively terminated the Agreement. Caplan subsequently requested the Borough to rescind the notification, to no avail. Instead, at a public meeting, Borough Council President Joseph Hunter ("President Hunter") expressed the Council's support for the decisions and actions of Manager Winslade and Chief O'Neill. The Borough published the minutes from this meeting on its website. At the same meeting, Borough Solicitor James M. McNamara ("Solicitor McNamara") agreed to look into the matter. A few days later, he informed Plaintiffs, "The Borough of Yardley is in no position to make a determination as to the legality of the[ Games] and the effect of possible use of the [Games] in the [Yardley] American Legion hall." (*Id.* at 40.)

5

Notwithstanding this disclaimer of authority, the Borough and its officers continued to refuse to rescind the official notification. Instead, Solicitor McNamara suggested the parties wait until the Bucks County District Attorney's Office issued an opinion on the matter. The Bucks County District Attorney, however, declined to offer an opinion after inspecting the Games.

As a consequence of the Borough's actions, Plaintiffs lost their only contract in Pennsylvania and have since been unable to enter into additional contracts. Although several other potential customers have indicated their willingness to enter into agreements with Plaintiffs, they have declined to do so because of the Borough's assessment of the Games. As a result, Plaintiffs have been unable to distribute its inventory of fifty-four Games and have been deterred from manufacturing "hundreds more."

## B. Procedural History

Plaintiffs filed a complaint in the District Court against the Borough of Yardley, Manager Winslade, Chief O'Neill, Solicitor McNamara, and President Hunter[3] asserting four counts: (I) a § 1983 claim for violation of procedural due process against all Defendants; (II) tortious interference with contract against Manager Winslade and Chief O'Neill; (III) commercial disparagement against Manager Winslade, Chief O'Neill, and President Hunter; and (IV) a request for declaratory relief against all Defendants that the

---

[3] Chief O'Neill retained separate counsel and, when appropriate, is referred to separately. All other defendants are collectively referred to as "Borough Defendants." Otherwise, general references to "Defendants" include both the Borough Defendants and Chief O'Neill.

Games are "games of skill that are legal under the laws of the Commonwealth of Pennsylvania." (App. at 46.)

On August 21, 2009, the District Court dismissed Plaintiffs' complaint in its entirety. The Court concluded that Plaintiffs failed to identify a protected property or liberty interest to support Count I and, regardless, Defendants are entitled to qualified immunity. The Court also determined that the individual Defendants are entitled to statutory immunity from Counts II and III, and that Plaintiffs failed to join indispensable parties for Count IV. Plaintiffs then sought leave to file an amended complaint, which the District Court denied in its September 29, 2009 footnote-order. The Court stated: "Not only is the Proposed Amended Complaint substantially similar to the original complaint, but the proposal also fails to address the issue of prejudice to the absent parties that would unquestionably be affected by the outcome of this matter." (*Id.* at 18 n.1.) Plaintiffs filed this timely appeal.[4]

---

[4] The notice of appeal in a civil action must be filed within thirty days after the entry of the judgment appealed. Fed. R. App. P. 4(a)(1)(A). If, however, the party files a motion to alter or amend the judgment within the time permitted under the Federal Rules of Civil Procedure, the time for filing the notice of appeal runs from the entry of the order disposing of such motion. *Id.* R. 4(a)(4)(A)(iv). Some courts have treated a motion for leave to file an amended complaint as a motion to alter or amend, so long as it is filed within ten days after entry of the judgment. *See, e.g.*, *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1183 (10th Cir. 2000); *see also Rankin v. Heckler*, 761 F.2d 936, 942 (3d Cir. 1985) ("Regardless of how it is styled, a motion filed within ten days of entry of judgment questioning the correctness of a judgment may be treated as a motion to alter or amend the judgment under Rule 59(e)."). Plaintiffs filed their motion to amend within ten days of the August 21, 2009 order. *See also* Fed. R. Civ. P. 6(a) (establishing manner of computing time). The District Court disposed of the motion on September 29, 2009, and

7

## II. Jurisdiction and Standards of Review

The District Court exercised subject matter jurisdiction over Plaintiffs' § 1983 claim pursuant to 28 U.S.C. § 1331, and exercised supplemental jurisdiction over the tort and declaratory judgment actions pursuant to § 1367. The Court had authority to issue declaratory relief under § 2201. We have jurisdiction under § 1291 to review an order granting a motion to dismiss. *See, e.g.*, *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

We exercise plenary review over a district court's order granting a motion to dismiss under Rule 12(b)(6). *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009). First, we must distinguish between factual allegations and legal conclusions in the complaint; second, if the complaint sets forth well-pleaded factual allegations, we may assume their veracity and draw inferences favorable to the non-moving party, but then must determine whether the factual allegations show an entitlement to relief. *Phillips*, 515 F.3d at 233-34; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 1953 (2009).

Of course, whether a claim is plausible depends on the nature of the claim asserted. *See Phillips*, 515 F.3d at 233. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims. *Iqbal*, 129 S. Ct. at 1949; *Phillips*, 515 F.3d at 234. At this stage of the litigation, we focus on whether

---

Plaintiffs filed their notice of appeal within thirty days of that order.

the non-moving party sufficiently pled its claims, not whether it can prove its claims. *Fowler*, 578 F.3d at 213.

We also perform plenary review of a grant of qualified immunity and apply the same standards applicable to review of Rule 12(b)(6) motions. *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). The grant of immunity will be upheld only when immunity is established on the face of the complaint. *Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006).

We perform a bifurcated review for dismissals under Rule 12(b)(7): Rule 19(a) conclusions of law are subject to plenary review and factual findings are reviewed for clear error, and a Rule 19(b) determination that a party is indispensable is reviewed for abuse of discretion. *See Huber v. Taylor*, 532 F.3d 237, 247 (3d Cir. 2008). We also review a district court's denial of a motion for leave to file an amended complaint for abuse of discretion. *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009). "An abuse of discretion arises when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *NLRB v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992) (quotations omitted).

### III. Discussion

#### A. Count I: § 1983 Procedural Due Process

The District Court dismissed Plaintiffs' § 1983 claim for two reasons: (1) they failed to assert a property or liberty interest protected by the Fourteenth Amendment, and

9

(2) Defendants are entitled to qualified immunity. We will affirm the District Court's dismissal because Plaintiffs have not alleged deprivation of a protected interest.

The Fourteenth Amendment prohibits state action which "deprive[s] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To enable individuals to enforce these rights, Congress enacted § 1983 as a federal cause of action against deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755 (2005). To state a § 1983 claim, Plaintiffs must demonstrate that Defendants, acting under the color of state law, deprived Plaintiffs of a right secured by the Constitution or the laws of the United States. *See Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). Plaintiffs allege a violation of procedural due process.

To establish a procedural due process claim under § 1983, Plaintiffs must prove (1) a deprivation of an individual interest encompassed by the Fourteenth Amendment's protection of life, liberty, or property, and (2) that the procedures available did not provide due process of law. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). The first step in evaluating a § 1983 claim is to identify the exact contours of the underlying right Plaintiffs claim was violated and to determine whether they have alleged deprivation of a constitutional right at all. *See Chainey*, 523 F.3d at 219. Plaintiffs argue Defendants deprived them of their property and liberty interests in the right to engage in a legitimate business free from arbitrary state deprivation. We will

10

address the property and liberty characterizations in turn.

### 1. Property Interest

Procedural due process does not protect every benefit; rather, to have a property interest in a benefit, a person must clearly have more than an abstract need or desire and more than a unilateral expectation of receiving the benefit. *Gonzales*, 545 U.S. at 756. In constitutional parlance, the claimant must have a legitimate claim of an "entitlement." *Id.* Entitlements, however, are not established by the Constitution; rather, they are created and defined by existing rules or understandings that stem from an independent source, such as state law. *Id.* A claimant must show an entitlement to a property interest created by a state statute or regulation or arising from government policy or a mutually explicit understanding. *Carter v. City of Philadelphia*, 989 F.2d 117, 120 (3d Cir. 1993); *see Baraka v. McGreevey*, 481 F.3d 187, 206 (3d Cir. 2007); *Rogers v. Bucks County Domestic Relations Section*, 959 F.2d 1268, 1274 (3d Cir. 1992).

Plaintiffs cite no statute, regulation, government policy, or mutually explicit understanding in their complaint that would demonstrate an entitlement to pursue their business interests. Nor have Plaintiffs cited any source for their entitlement to this Court. Thus, Plaintiffs pled only a unilateral expectation of an interest in operating their business, which is not sufficient to plead an entitlement to a property interest under the Fourteenth Amendment.

### 2. Liberty Interest

11

We have, however, recognized a relevant liberty interest – the right to hold specific private employment and to follow a chosen profession free from unreasonable government interference. *See Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994). But the Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation; state actions that exclude a person from one particular job are not actionable in due process claims. *See id.* Thus, it is the liberty interest to pursue a calling or occupation, not the right to a specific job, that is secured by the Fourteenth Amendment. *Id.* at 1259, 1262; *see Thomas*, 463 F.3d at 297; *Latessa v. N.J. Racing Comm'n*, 113 F.3d 1313, 1317-18 (3d Cir. 1997). Therefore, Plaintiffs must allege an inability to obtain employment within the field, not just a particular job or at a specific location or facility. *See, e.g.*, *Latessa*, 113 F.3d at 1317-18.

Assuming Plaintiffs' allegations are true, they have been unable to lease additional Games in Pennsylvania because of Defendants' official notification letter. In fact, several businesses have acknowledged their willingness to enter into commercial relationships with Plaintiffs but for Defendants' declaration that the machines are illegal. Regardless, at best, Plaintiffs have been precluded from distributing only two Games, and counsel conceded at argument that Plaintiffs can sell other Games in other locations. As such, Plaintiffs have only been deprived of the specific job of distributing the Games in Pennsylvania, but they can still engage in the general distribution business, to say nothing of their ability to lease Games in other states. *See Bernard v. United Twp. High Sch. Dist.*

12

*No. 30*, 5 F.3d 1090, 1092-93 (7th Cir. 1993) (finding no liberty interest in distributing one particular print because plaintiff was not prevented from distributing other prints); *see also Thomas*, 463 F.3d at 297 (reviewing official conduct that affected plaintiff's entire business and left plaintiff with no other options). Indeed, counsel for Chief O'Neill acknowledged at argument that Plaintiffs would be permitted to distribute other unquestionably legal games in the Borough of Yardley.

Consequently, Plaintiffs have failed to assert a protected property or liberty interest, an essential element to their procedural due process claim. We will affirm the District Court's dismissal of Count I.[5]

## B. Counts II and III: Tort Claims

The District Court dismissed Plaintiffs' tort claims against President Hunter, Manager Winslade, and Chief O'Neill because each is entitled to statutory immunity under Pennsylvania law. The Court also concluded that Plaintiffs did not sufficiently plead that Defendants' conduct fell within a statutory exception to the grant of immunity.

In Pennsylvania, "no local agency shall be liable for any damages on account of

---

[5] The District Court also granted Defendants qualified immunity from Plaintiffs' § 1983 claim. Our conclusion that Plaintiffs were not deprived of a protected interest justifies the grant of immunity. The first inquiry under qualified immunity requires the Court to decide whether the facts Plaintiffs have alleged constitute a violation of a constitutional right. *See Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). Because we conclude that Plaintiffs did not identify a protected property or liberty interest, they have not alleged a violation of a constitutional right. Therefore, we could alternatively dismiss Count I on the basis of qualified immunity. *See id.*

13

any injury to a person or property caused by any act of the local agency or any employee thereof or any other person." 42 Pa. Cons. Stat. § 8541. The local agency, however, may be liable if (1) the damages would be recoverable if caused by a person not having immunity under § 8541, (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his or her office or duties, and (3) the injury falls within an enumerated exception. *Id.* § 8542. The parties agree that none of these exceptions apply.

More pertinent to this matter, an employee of a local agency enjoys the same scope of immunity as the agency. *See id.* § 8545. Section 8550, however, abrogates the employee's immunity if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct." *Id.* § 8550.

"Willful misconduct" is synonymous with "intentional tort." *Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995). Accordingly, the actor must have desired to bring about the result, or must at least have known or should have known that the result was substantially certain to follow. *See Kuzel v. Krause*, 658 A.2d 856, 859 (Pa. Commw. Ct. 1995). Thus, our inquiry focuses on whether Plaintiffs pled sufficient facts to show these Defendants desired the termination of the Agreement or to cause Plaintiffs to suffer pecuniary loss, or that Defendants knew or should have known those results were substantially certain to follow. *See also Stoeckinger v. Presidential Fin. Corp. of*

14

*Del. Valley*, 948 A.2d 828, 834 (Pa. Super. Ct. 2008) (stating elements of tortious interference claim); *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (listing elements of commercial disparagement claim).

With regard to the tortious interference claim, Plaintiffs make bare assertions that Manager Winslade and Chief O'Neill acted willfully to bring about the termination of the Agreement, which is not sufficient under *Iqbal*, 129 S. Ct. at 1950, 1953. They merely allege that the Agreement automatically terminated after Defendants notified the Yardley American Legion that the Games are illegal. This does not reveal that Manager Winslade or Chief O'Neill desired or was substantially certain the Agreement would terminate as a result of his conduct. Therefore, the allegations fail to show an entitlement to relief.

As for the commercial disparagement claim, Plaintiffs allege that President Hunter adopted Manager Winslade's and Chief O'Neill's actions, and that the adoption was published on the Borough's website. They further allege that Defendants refused to rescind the official notification notwithstanding Solicitor McNamara's disclaimer of authority. Plaintiffs then make a bare assertion that Defendants engaged in this conduct to cause, or should have known their conduct would cause, Plaintiffs to suffer pecuniary loss. Plaintiffs assert no facts to support this alleged intent and, therefore, they failed to show an entitlement to relief. *See id.* Accordingly, we will affirm the dismissal of Counts II and III.

### C.  Count IV: Declaratory Judgment

15

The District Court dismissed Plaintiffs' request for declaratory relief because they failed to join indispensable parties. On appeal, Plaintiffs argue that the purportedly indispensable parties are not necessary to this action. The Borough Defendants contend that we should abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). We decline the invitation to abstain and will vacate the District Court's dismissal because the allegedly indispensable parties are not necessary. On remand, the District Court should consider whether it wishes to continue to exercise jurisdiction over this claim and, if so, whether it should exercise its discretion and decline to grant declaratory relief.[6]

### 1. *Burford* Abstention

We take a two-step approach to *Burford* abstention analysis. *Matusow v. Trans-*

---

[6] Section 2201 grants district courts authority to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). But § 2201 merely enlarges the range of remedies available; it does not create subject matter jurisdiction. *Mack Trucks, Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 856 F.2d 579, 583 n.4 (3d Cir. 1988). Therefore, the court must find an independent basis for jurisdiction before it can consider a declaratory judgment action. *Id.* Plaintiffs' counsel confirmed at argument that jurisdiction for the declaratory judgment action is based on supplemental jurisdiction. We have affirmed the dismissal of Plaintiffs' § 1983 claim, the only claim that arises under federal law. *See* 28 U.S.C. § 1331. Thus, the District Court may find it appropriate to consider whether it will exercise supplemental jurisdiction over Plaintiffs' request for a declaration that the Games are "legal *under the laws of the Commonwealth of Pennsylvania*." (*See* App. at 46 (emphasis added).)

In addition, a declaratory judgment is discretionary and courts are under no compulsion to exercise that discretion. *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). The central question is whether the controversy may better be settled in state court. *See United States v. Pennsylvania, Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991). None of the limitations on the court's discretion appears to exist in this case. *See Summy*, 234 F.3d at 134 (citing *Dep't of Envtl. Res.*, 923 F.2d at 1076-79).

16

*County Title Agency, LLC*, 545 F.3d 241, 247-48 (3d Cir. 2008); *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 104-05 (3d Cir. 1999). First, we consider whether timely and adequate state court review is available. *Chiropractic Am.*, 180 F.3d at 104. If there is not, abstention is not appropriate; however, if there is, we then examine three issues: (1) whether the particular regulatory scheme involves matters of substantial public concern, (2) whether it is the sort of complex, technical regulatory scheme to which *Burford* is usually applied, and (3) whether federal review of Plaintiffs' claims would interfere with Pennsylvania's efforts to establish and maintain a coherent regulatory policy. *Id.* at 105; *see New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989); *see also Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995) (stating that courts proceed to second step only if there is adequate and timely state review available). Each of these factors need not be present to warrant abstention. *Lac D'Amiante du Quebec, Ltee v. Am. Home Assurance Co.*, 864 F.2d 1033, 1043 (3d Cir. 1988).

Pennsylvania courts routinely decide what conduct constitutes "gambling" and whether such conduct is "unlawful." Moreover, Pennsylvania allows parties to seek declaratory relief. *See* 42 Pa. Cons. Stat. § 7532. As such, there is adequate and timely review available in state court. Therefore, we turn our focus to the issues identified in *Chiropractic America*. 180 F.3d at 105.

To implicate a matter of substantial public concern, the suit must be filed against a party protected by or subject to the regulatory scheme. *See, e.g., Univ. of Md. at Balt. v.*

17

*Peat Marwick Main & Co.*, 923 F.2d 265, 273-74 (3d Cir. 1991). In this case, Plaintiffs, the parties purportedly subject to the gambling regulations, initiated suit against parties who are neither subject to nor protected by, and do not even control, the regulations at issue. Therefore, this factor is not implicated.

To implicate the sort of technical, complex regulatory scheme to which *Burford* abstention is usually applied, the action must challenge the scheme itself, rather than just actions taken under color of the scheme. *See Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 409-10 (3d Cir. 2005); *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1202-03 (3d Cir. 1992); *Izzo v. Borough of River Edge*, 843 F.2d 765, 769 (3d Cir. 1988). This case falls within the latter category – Plaintiffs are not challenging the validity of the gambling regulations but rather the application of the rules to the Games. Further, the regulatory scheme does not appear to be all-encompassing or extremely intertwined because Pennsylvania courts have developed common law principles to identify what constitutes "gambling" and whether it is unlawful under the criminal statute. *See, e.g.*, *Commonwealth v. Dent*, 992 A.2d 190, 192-93, 197 (Pa. Super. Ct. 2010). As such, this factor also is not implicated.

Finally, we consider whether federal review of Plaintiffs' claims would interfere with Pennsylvania's efforts to establish and maintain a coherent regulatory policy. *Chiropractic Am.*, 180 F.3d at 105. The state's interest, however, must be very important – a federal court cannot just abstain to avoid disrupting the scheme. *Peat Marwick*, 923

18

F.2d at 272. Regardless of the importance of Pennsylvania's regulation of gambling, the other factors weigh against abstention. Therefore, we will not abstain.

## 2. Indispensable Parties

The District Court dismissed Count IV because it identified Commonwealth entities it concluded were indispensable in resolving Plaintiffs' claim for declaratory relief.[7] The Court, however, erred in its analysis of whether the entities were necessary under Rule 19(a); therefore, we will vacate the dismissal on this basis.

Rule 19 analysis is a two-step process. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). The court must first determine whether the absent parties are "necessary" under Rule 19(a). *Id.* If the parties are necessary, and joinder is not feasible, then the court must determine whether the parties are "indispensable" under Rule 19(b). *Id.* A holding that joinder is compulsory under Rule 19(a) is a necessary predicate to the district court's discretionary determination under Rule 19(b). *Id.* at 313.

Rule 19 provides:

"A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of

---

[7]    The District Court identified these parties based on Plaintiffs' complaint. These parties include: the Commonwealth of Pennsylvania; the PGCB; the BCLE; the Pennsylvania Attorney General; and the District Attorney of Bucks County, Pennsylvania.

incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Fed. R. Civ. P. 19(a)(1). Subsection (a)(1)(A) is limited to considerations of whether the court can grant complete relief to persons already named; the effect on unnamed parties is immaterial. *See Gen. Refractories Co.*, 500 F.3d at 313.

Subsection (a)(1)(B), however, requires the court to take into consideration the effect the resolution of the dispute may have on absent parties. *Id.* at 316. Under the first prong of subsection (a)(1)(B), a party must show that some outcome of the federal case would preclude the absent parties with respect to an issue material to the absent parties' rights or duties. *See id.* An assertion that a disposition would amount to persuasive precedent, however, is not sufficient. *See Huber*, 532 F.3d at 250. In addition, concerns regarding privity and the possibility of preclusion are too speculative to require joinder. *See id.* at 251.

The second prong of (a)(1)(B) focuses on the obligations of named parties, not absent parties. *See, e.g.*, *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1347 (6th Cir. 1993); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 n.15 (9th Cir. 1983). Further, an unsubstantiated or speculative risk will not satisfy Rule 19(a) criteria – the possibility of exposure to multiple or inconsistent obligations must be real. *See* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1604, at 64 (3d ed. 2001).

Because the District Court did not indicate which subsection of Rule 19(a) it relied

20

on, we will consider each. Subsection (a)(1)(A) does not apply to absent parties. Subsection (a)(1)(B)(i), however, does apply to absent parties, and the Borough Defendants claim that a decision in federal court would impair or impede the unnamed entities' interest in consistent regulation of gambling in Pennsylvania. Notwithstanding the merit of this interest, a declaratory judgment in Plaintiffs' favor would amount to nothing more than persuasive precedent in any subsequent matter and likely would not preclude the entities from initiating proceedings in state court for a contrary determination. These concerns, however, are not sufficient to render the entities necessary under Rule 19(a), and the prospect of any future action is purely speculative. *See Huber*, 532 F.3d at 250-51; *Gen. Refractories Co.*, 500 F.3d at 315 n.13, 317. As such, these absent parties are not necessary under Rule 19(a)(1)(B)(i).

In addition, the Commonwealth entities are not necessary under subsection (a)(1)(B)(ii). This subsection focuses on the effect on obligations of named parties, and there is no real risk of multiple or inconsistent obligations to any of the named parties. Any anticipated reaction by the Commonwealth entities is purely speculative and, therefore, not sufficient to satisfy Rule 19(a) criteria.

Accordingly, the Commonwealth entities are not necessary under Rule 19, and the District Court's conclusion that they were indispensable cannot stand. *See Huber*, 532 F.3d at 251. Therefore, we will vacate the dismissal of Count IV, with instructions to the District Court to consider its continuing jurisdiction and its exercise of discretion.

21

### D. Motion for Leave to File an Amended Complaint

A party may amend a filing as a matter of course (1) before being served with a responsive pleading or (2) within twenty days after service if a responsive pleading is not allowed and the action has not yet been placed on the trial calendar. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires." *Id.* R. 15(a)(2).

If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment, even if the party does not request leave, unless such an amendment would be inequitable or futile. *See Phillips*, 515 F.3d at 245; *Alston v. Parker*, 363 F.3d 229, 235, 236 (3d Cir. 2004) (permitting denial of amendment only on grounds of bad faith, undue delay, prejudice, or futility). "Futility" means that the complaint, as amended, would still fail to state a claim upon which relief could be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). In assessing futility, we apply the same legal-sufficiency standard as applies under Rule 12(b)(6). *Id.*

In this case, the District Court denied Plaintiffs' motion for leave to amend, in part, because the amended complaint did not address the deficiencies in the original complaint. Although the court did not explicitly say so, it apparently denied leave based on futility.

We agree that Plaintiffs' proposed amendment would be futile. The amended complaint still does not identify a protected liberty or property interest essential to Plaintiffs' procedural due process claim. Further, the amended complaint still only makes

22

bare assertions that the conduct of President Hunter, Manager Winslade, and Chief O'Neill constituted willful misconduct – Plaintiffs allege that their new allegations establish that the conduct was "unlawful" and "unreasonable," but nothing they allege shows that these Defendants desired the termination of the Agreement or desired to cause pecuniary loss, or that they were substantially certain such results would occur. *See Kuzel*, 658 A.2d at 859; *see also Iqbal*, 129 S. Ct. at 1950, 1953 (explaining pleading burden). Therefore, Defendants remain entitled to immunity under Pennsylvania law. Finally, Plaintiffs' claim for declaratory relief is not part of their amended complaint.

Plaintiffs' proposed amendment still fails to state a claim upon which relief could be granted and, therefore, is futile. *See In re Burlington Coat Factory*, 114 F.3d at 1434. As such, the District Court did not abuse its discretion, and we will affirm the denial.

### IV. Conclusion

For the foregoing reasons, we will affirm the August 21, 2009 order dismissing Counts I, II, and III, but vacate that portion of the order dismissing Count IV. We will affirm the September 29, 2009 order denying leave to amend Plaintiffs' complaint. On remand, the District Court should consider whether it wishes to continue to exercise subject matter jurisdiction over Plaintiffs' request for a declaratory judgment. If the court retains jurisdiction, it should consider whether it should exercise its discretion and decline to grant the requested relief.

23